# CHARLESTON.

## WARD & Co. *v.* COUNTY COURT.

Submitted January 31, 1902.   Decided March 8, 1902.

1. LICENSE—*Municipal Power Over.*

    Chapter 44 of the Acts of 1899 give to the council of the City of Grafton exclusive power to grant or refuse license to sell spirituous liquors within that city, regardless of the action of the county court, and the provision of the act that the county court shall grant state license after the council has granted such license, is mandatory upon the county court.   (pp. 103, 104).

2. LICENSE TO SELL LIQUOR—*Council's Power Over.*

    The provision of chapter 44, Acts 1899, that the council of the City of Grafton shall have exclusive power to grant liquor licenses within it, is not repugnant to section 24, Art. VIII, of the Constitution, or any other clause therein.   (p. 105).

Application by A. F. Ward and F. C. Primm for a writ of *mandamus* to the county court of Taylor County.

*Mandamus granted.*

J. G. ST. CLAIR, for petitioners.

B. F. BAILEY, for respondent.

BRANNON, JUDGE:

On the 4th day of November, 1901, the council of the City of Grafton granted to A. F. Ward and F. C. Primm, doing business as A. F. Ward & Co., a license to retail spirituous liquors, and on the 16th of December, 1901, they asked the county court of Taylor County for its consent to such license; but said court refused the same, and the said Ward and Primm have asked this Court to compel by *mandamus* the said county court to grant such license.

The Legislature on the 24th of February, 1899, passed an act amending and re-enacting and reducing into one the several acts incorporating the town of Grafton.   See chapter 44, Acts of 1899.   Section 28 of that act provides that, "Whenever anything for which a state license is required is to be done in said city the council may require a city license therefor, and may impose a tax thereon for the use of said city, and whenever said city

license is granted by the council for the sale of brandy, whisky, rum, gin, wine, porter, ale or beer, or any other spirituous, vinous or malt liquors, or dirnks of like nature, the county court shall grant a state license for the sale thereof within the corporate limits of said city." It would seem that this act very plainly authorizes the city council to grant such license without the power or discretion in the county court to say nay. The case is governed by what was said in the opinion in *Moundsville* v. *Fountain,* 27 W. Va. 182, which was ratified and carried into pointed decision by this Court in *Wilson* v. *Ross,* 40 W. Va. 278, holding that an act giving the town of Ceredo power to grant state license for intoxicating liquors was exclusive of any power of the county court to deny it. It is true that the Ceredo act granted the council that power without reference to any action by the county court; whereas in the present case the Grafton act refers the subject to the county court. Why it does so is not easily seen. Perhaps it was only that the usual routine for obtaining such license was thought proper to be followed, that is, an order made by the county court consenting to the license, and constituting authority to the assessor to issue the certificate of license. Whatever the reason for allowing any action by the county court, we cannot fail to see that the Grafton act designed to leave the grant exclusively to the city council, because it says that the council may grant the license, and that when it does the county court shall grant a state license, using mandatory words, and manifesting mandatory intention. The general provisions of law antecedent to that act giving the county court power to say yea or nay as to such license is clearly repealed, as to Grafton, by this special act, because the two cannot stand together. *Shields* v. *Bennett,* 8 W. Va. 87; *State* v. *Cain, Id.* 730. This special act was clearly designed to cover the whole subject, to make full provision upon the subject of granting liquor license in Grafton, was intended to lay down the only rule governing that matter, and thus it repealed antecedent law, because it covers the whole ground and is the latest expression of the legislative will, even though the conflict between the old and the new law were not explicit. *McConiha* v. *Guthrie,* 21 W. Va. 134. See what is said upon this subject in *Dunfee* v. *Childs,* 45 W. Va. p. 158, 159.

This is clearly so, unless we can say that this Grafton act is repugnant to section 24, Art. VIII, of the Constitution, providing

that county courts, "under such regulations as may be prescribed by law shall have the superintendence and administration of the internal police and fiscal affairs of their counties, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies. Provided, that no license for the sale of intoxicating liquors in any incorporated city, town or village shall be granted without the consent of the municipal authorities thereof." But we considered this question of the constitutionality of special acts giving municipalities sole power to grant liquor license in *Wilson* v. *Ross,* 40 W. Va. 278, and held that such legislation is not contrary to the Constitution. When that case was up I had doubt upon the subject, on the theory that the language of the Constitution vests in the county court jurisdiction to grant or refuse license, and restrains that jurisdiction or power only so far as to say that the county court should not force license upon a municipality without its consent, and that with that exception the power of the county court was unlimited; in other words, the county court was prohibited from enforcing license upon an unwilling town, but it was not said that if the town was willing for the license the county court must necessarily grant it. It seemed that the intent was to leave the power to say nay with the court, notwithstanding the council had said yea. But to so hold in that case we would have been compelled to do, what is always done with great hesitation, overthrow an act of the Legislature, and take away from many towns power which had by many acts through years been vested in them, and that too where the question was dubious and debateable. That case rules this case, and is accordant with the expression of opinion in *Moundsville* v. *Fountaine,* cited.

Another question is presented. On December 2, 1901, the council empowered the mayor and clerk to approve the bond of A. F. Ward & Co., upon condition that they should not accept the bond until the county court should agree to grant the license. What is the effect of this qualification of the former absolute grant of license? Does it have effect to make it conditional upon the action of the county court? Is it that far a revocation of the former grant? I do not think so, for the reason that the act of the Legislature vested in the council full and absolute power either to give or refuse the license, and that when once it grants the license without condition its function

ends, and the grantee of the license has a vested right to carry on the business authorized by that license, and the council cannot revoke it except for some legal cause thereafter occurring. It cannot refer the matter to the county court for the exercise of a discretion taken away from the county court by the act and vested solely in the council, cannot make the citizen's right dependent upon the action of a tribunal vested with no power by the law.

It is suggested that the action of the council is invalid because it did not enter of record that the applicants were not of intemperate habits, since section 14, chapter 32, of the Code of 1899, prohibits the issue of a license unless the court or council is satisfied and enters upon its record that the applicant for the license is not of intemperate habits. This is strongly prohibitory upon the council, and ought always to be scrupulously observed; but it is not jurisdictional, that is, this statement is not, as when once the order is made it is presumed that the court or council did make inquiry into that matter, and was satisfied thereof. It is like the case where a judgment is rendered, and it is good though the facts upon which it is predicated are not all stated. I do not think that the omission to make the entry of record as to the habits of the party, would nullify the ultimate action of the council granting the license.

The technical objection is made that the petition for *mandamus* says that A. F. Ward and F. C. Primm asked this license as individuals whereas the council record says that the application was by Ward and Primm doing business as A. F. Ward & Co. This objection is not substantial. Partners may carry on this business. A grant to them as individuals jointly would be good, and they might use the license as a partnership, or a grant to them as individuals composing a firm would be good.

I note, as to the matter of the habits of the parties, that there is filed a duly attested formal copy of the council, which incorporates the certificate that the applicants were of temperate habits. This certificate is denied. There is another leaving that clause out. Which are we to credit in this careless way of doing business? But as above stated, I regard it as immaterial.

Therefore we award the peremptory *mandamus* as prayed for.

*Mandamus granted.*

NOTE BY McWHORTER, JUDGE:

While I desire not to dissent from the opinion written in this case I cannot get consent of my mind to unqualifiedly concur in it, but simply acquisce therein because of the former uniform holdings of this Court sustaining the constitutionality of acts of the legislature taking from the county court the superiuntendence and the administration of the police affairs of their counties and committing the same to the municipal authorities of cities, towns and villages in so far as relates to the granting of license therein for the sale of intoxicating liquors; and the many acts of the legislature in passing such statutes notwithstanding the explicit and unmistakable provisions of section 24, Article VIII of the Constitution conferring upon the county courts the superintendence and administration of the internal police affairs of their counties, with the one limitation only "that no license for the sale of intoxicating liquors in any incorporated city, town, or village shall be granted without the consent of the municipal authorities thereof first had and obtained." Chapter 44, Acts 1899, takes from the county court every semblance of superintendence and administration of the internal police affairs in so far as they respect the issuing of license for the sale of intoxicating liquors in the City of Grafton and transfers said superintendence and administration to the municipal authorities of said city.