# CHARLESTON.

STATE *ex rel.* WALTER S. HALLANAN, STATE TAX
COMMISSIONER, *v.* E. B. ROCKE, ASSESSOR.

Sumbitted June 12, 1922.   Decided June 13, 1922.
(Opinion filed September 12, 1922.)

1.  TAXATION—*Assessors Have No Full and Exclusive Authority Over Valuation of Property for Taxation.*

The provisions of Secs. 1 and 2 of Art. IX and Sec: 6 of Art. IV, of the Constitution of this State, creating the office of assessor in each county, providing for the appointment of as-

sistant assessors and securing to assessors, along with other constitutional officers, right to hold their offices and discharge the duties thereof, until their successors are elected and qualified, unless sooner removed from office, for cause, read in connection with Sec. 1 of Art. X of said constitution, requiring equality and uniformity of taxation of all property real and personal, in proportion to its value, to be ascertained as directed by law, do not confer upon assessors full and exclusive power and authority over the subject of valuation of property in their respective counties, for the purposes of taxation. (p. 427).

2. SAME—*Legislature May Supervise Assessors in Valuation and Assessment of Property.*

Being so read and properly interpreted, they make assessors agents or instrumentalities in the hands of the Legislature, for the exercise of its sovereign power of taxation and execution of the constitutional mandate requiring equality and uniformity in taxation, and that body, under general laws enacted by it, may supervise their work of valuation and assessment, either in its progress or after completion thereof, by and through the action of other officers, agents and tribunals. (p. 427).

3. CONSTITUTIONAL LAW—*Doubtful Provision as to Legislative Power Long Exercised Must Be Construed in Favor of Power.*

If this construction of said constitutional provisions could be regarded as being doubtful, the doubt would have to be resolved in favor of such legislative power, and legislative construction thereof, made manifest by the exercise of such power throughout a long period of years, acquiesced in by the people of the State and its courts, would now forbid judicial disturbance thereof. (p. 427).

4. MANDAMUS—*Duties of Assessors Ministerial and Not Judicial.*

Under the Constitution and statutes of this State, an assessor performs no judicial function, in the determination of questions of taxability and valuation of property, in the assessment thereof for taxation. In legal contemplation he performs merely ministerial duties; notwithstanding the necessity of his ascertainment of facts and exercise of judgment as to matters of law and fact. (p. 433).

5. CONSTITUTIONAL LAW—*Acts By Officers of State Within Limits of Constitutional Authority Cannot Be Deemed Deprivation of Property Without Due Process of Law.*

An act done by an officer or agent of a state, under and by

virtue of a statute enacted by its legislature, within the limits of its constitutional power and authority, cannot be deemed to have deprived any person affected by it, of any property, right or privilege, without due process of law.   (p. 434).

6.   SAME—*Taxation Statute Authorizing State Tax Commissioner to Assess Property. Upon Failure of Assessor, Held Constitutional.*

A provision found in Sec. 12 of Ch. 29 of the Code, as amended by Ch. 152 of Acts 1921, the assessment statute, requiring assessors to assess real and personal property, for taxation, at its true and actual value as therein defined, and empowering the State Tax Commissioner, upon ascertainment by him, of neglect, failure or refusal of any assessor, to list and so assess property, to order and direct a reassessment of any or all of the property in the county, district or municipality in which such default occurs, and appoint special assessors to make such reassessment, is not in conflict with, and does not contravene the provisions of, the state and federal constitutions above mentioned and indicated, nor any of them. (p. 432).

7.   MANDAMUS—*Evasive Return of Books and Papers to Alternative Writ of Mandamus Held Insufficient.*

Without inquiry or decision as to whether an assessor whose work is interfered with by the State Tax Commissioner, upon the theory of dereliction of duty on his part, within the meaning of such provision, may successfully resist a judicial proceeding against him, to require delivery by him, of his books and papers to such special assessors, for use in such reassessment, by refutation of the charge of such dereliction, it is held that an evasive return to an alternative writ of mandamus in such a proceeding, showing no assessment of real estate, except re-entry of the valuations of the preceding year, and claiming correctness thereof, is insufficient.   (p. 434).

Mandamus by the State, on the relation of Walter S. Hallanan, State Tax Commissioner, against E. B. Rocke, County Assessor, to compel defendant to perform duties devolved upon him by law.

*Writ awarded.*

*Jno. T. Simms*, for relator.
*W. L. Lee* and *John H. Holt*, for respondent.

POFFENBARGER, PRESIDENT:

This proceeding by mandamus, at the instance of the State Tax Commissioner, against the assessor of Fayette County,

to compel the latter to perform duties devolved upon him by law, involves the question of the validity of certain provisions of Sec. 12 of Ch. 29 of the Code, as amended by Ch. 152 of the Acts of 1921, and the sufficiency of that part of the respondent's return, which claims a state of facts, precluding the relief sought, in the event of failure of his contentions respecting the validity of the statute.

The statute involved requires valuation by the assessor of all real and personal property in his county, for purposes of taxation, at its true and actual value, determinable by the price for which it would sell upon usual terms of sale, and not the price it would bring at forced sale. It also vests power and authority in the State Tax Commissioner to order a reassessment, in case of neglect, failure or refusal of any assessor to make such valuations, and to appoint one or more special assessors to make such reassessment. In such case, the statute confers upon the special asessors all the power and authority now vested by law in assessors and makes their assessment the basis for action by the board of review and equalization and the levying bodies, subject to revision by appeal as provided in other sections of said chapter.

In the return to the alternative writ, its allegations of failure and refusal on the part of the respondent to assess the real estate in his county, agreeably to the requirements of law are denied, but the denial is accompanied by an admission that the valuations of real estate in said county for 1922 are the same as they were for the year 1921, except in those instances in which the lands have been enhanced in value by improvements made thereon since the assessments for the year 1921. Non-compliance with the orders and directions of the State Tax Commissioner, as to the basis of valuation, is admitted, and it is also admitted that the respondent refused to deliver to the special assessor the land books, blotters and other books and papers necessary to the work of reassessment.

Against the validity of the statute, several provisions of the State Constitution are invoked; namely, Secs. 1 and 2 of Art. IX, Sec. 6 of Art. IV and Art. V. In addition thereto, the Fifth and Fourteenth Amendments of the Constitution of the United States are relied upon. These constitutional guaranties and limitations are appealed to only in respect of the

office of assessor and its alleged prerogatives. No property right other than such as the respondent may have in his office is involved, and what is required of him by the statute does not involve any loss or sacrifice of his office or the salary or emoluments thereof. If his alleged misconduct has been wilful, it may result in the loss of the office and its benefits; but, as to that, he has right to a judicial hearing and determination and it is not now involved. The thing actually in issue is the disputed claim of right in the State Tax Commissioner, to correct errors and omissions in the work of the office of an assessor, by means of temporary and special assessors. His right to do so and of the Legislature to authorize such action are denied upon the theory of right vested in the assessor by the Constitution, to exercise the full power of valuation and assessment, in the first instance, to the exclusion of all other officers, and tribunals. In other words, it is contended that the statutory provision is void because it encroaches or innovates upon the constitutional office of assessor and works a curtailment of its powers and functions or obstructs, impedes and limits the exercise thereof. It will not be necessary to inquire whether such a right or privilege would be within the protection of the Fifth and Fourteenth Amendments to the Federal Constitution, unless it shall be found to have been vested by the State Constitution. Article V of the State Constitution is invoked upon the theory that assessment of property for taxation is a judicial function and cannot be vested in an executive officer such as that of State Tax Commissioner.

Secs. 1 and 2 of Art. IX of the State Constitution do no more than provide for the election of one and not more than two assessors in each county and the appointment of one or more assistant assessors with the advice and consent of the county court. Not a word is found in them respecting powers and duties of the assessor. Sec. 6 of Art. IV merely provides for removal of officers for certain specified causes, in such manner as may be prescribed by general laws, and for their continuance in their respective offices until their successors are elected or appointed and qualified, unless so removed.

It is extremely doubtful whether the exclusive right and power claimed could arise by implication, from the mere

creation of the office, without prescription of its duties, in the absence of any constitutional provision indicating the contrary, in view of common knowledge at the date of the adoption of the constitution, of the nature and functions of the office, as defined by its history and previous legislation; because the subject of its operation and functions is embraced within the scope of the sovereign power of taxation inherent in the Legislature, delegation of which is never judicially recognized unless clearly, if not indeed, expressly, made. *State ex rel. Dillon* v. *County Court,* 60 W. Va. 339; Lewis' Suth. Stat. Con. Sec. 541. If it should be found, upon investigation, that prior to the adoption of the constitution, each county had an assessor who had always, exclusively and without restraint, exercised the power of assessment, the circumstance would tend to prove intent of the people, in the adoption of that instrument, to clothe the office with the power claimed for it; but it would not put such intent beyond question. It might still be argued, with plausibility and force, that the office was provided merely for execution of the will of the Legislature, to such an extent and in such manner as should be prescribed by law. By Sec. 1 of Art. X of the Constitution, however, we are relieved from the duty and necessity of inquiry as to the meaning of the other privisions upon which the claims of delegation and exclusive power in the office are predicated. It says ''Taxation shall be equal and uniform throughout the state, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law.'' In this provision is found an express recognition of full legislative power and authority over the subject of valuation of property for purposes of taxation, and, if need be, a negation of delegation thereof to the assessors of the counties, by implication arising in the manner above suggested. Valuations are ''to be ascertained as directed by law.'' A similar expression found in Sec. 24 of Art. VIII, as defined in *State ex rel Dillon* v. *County Court,* 60 W. Va. 339, makes the county court virtually an agency or instrumentality in the hands of the Legislature, for the execution of its sovereign will and power. In the opinion filed in that case, exclusive jurisdiction and power in county courts over the subject of local taxation, claimed on the theory of

implication arising out of the general terms used and the nature and functions of the tribunal, was denied and the implication, if any, held to have been negatived by the use of the phrase, ''under such regulations as may be prescribed by law.'' As to this clause, see also *State* v. *Harden,* 62 W. Va. 313. Another provision of the same section, relating to contested elections of county and district officers, contains a similar phrase, which was interpreted as having saved to the Legislature power and authority to vest in circuit courts jurisdiction to hear and determine such contests *de novo,* on appeals from county courts, notwithstanding the use of terms indicative of intent to confer upon circuit courts only jurisdiction to review judgments of county courts in such cases. *Williamson* v. *Music,* 60 W. Va. 59.

The conclusion here foreshadowed is sustained by the rule of contemporaneous and practical construction by the Legislature. By an act passed December 27, 1873, almost contemporaneously with the beginning of government under the Constitution of 1872, the assessment of all of the real estate in every assessment district in the State was placed in the hands of commissioners appointed by the State Auditor, on the recommendations of the county courts. Acts 1872-3, Ch. 220. A reassessment of real estate was provided for, in like manner, by Ch. 32 of the Acts of 1882. A third reassessment by commissioners appointed by the Board of Public Works was provided for by Ch. 36 of the Acts 1891, and a fourth by such commissioners, by Ch. 21 of the Acts of 1899. Not until January 1, 1909, more than 35 years after the adoption of the present Constitution, was any assessor in the State allowed to value land for the purposes of taxation, or to make up the land books. Such valuation was first authorized by Ch. 4 Acts, 1904, to take effect January 1, 1909. The valuations were made by commissioners, under special acts of the Legislature, and the land books were made up by the clerks of the county courts, under provisions of general law.

Inequality in the valuations made under the Act of 1872-3, with reference to counties, due to adoption of different bases, having been discovered, the Act of 1882 made the Board of Public Works a board of equalization, with power to raise or lower the average valuation in any county in which they

should deem it to be either too high or too low, and this provision was incorporated in the reassessment act of 1891. By the reassessment act of 1899, a special board of equalization was created, consisting of one member from each of the four congressional districts and one at large, to be appointed by the Board of Public Works. Under the reassessment act of 1899, two counties avoided revaluation of their lands, by refusal of their citizens to do the work for the compensation provided, $3.00 per day, and other indirect methods, and reassessment thereof was provided for by Ch. 129, Acts of 1901.

Notwithstanding the constitutional provisions relied upon by the respondent and the requirement of uniformity by Sec. 1 of Art. X, as to real and personal property, the Legislature withheld from assessors the assessment of real estate, for a period of more than 35 years, commencing with the adoption of the Constitution, and dealt with the subject in such manner as to it seemed necessary to obtain proper valuations, to the end that the constitutional mandate requiring taxation to be equal and uniform should be complied with as nearly as possible. In addition to this long period of legislative construction acquiesced in generally by the assessors as well as the land owners, there is a judicial affirmance of its correctness in *Clark* v. *County Court,* 55 W. Va. 278. Mercer was one of the counties in which the reassessment under the act of 1899 was avoided. By way of pretended compliance with the requirements of the act, a commissioner made up a book in which he merely copied the valuations of the preceding year. To these valuations, the board of equalization added 25%, for the purposes of taxation for the year 1900. Relief from this addition, applied for in the County Court, on the ground that it was illegal and void, was denied. On an appeal to the Circuit Court, it was allowed and this court reversed the judgment of the Circuit Court. Obviously, that decision is directly in point and determines the question now under consideration, adversely to the contentions of the respondent. Although the opinion does not proceed upon the theory of validity of the addition made by the board of equalization, it necessarily

recognizes the authority of that board, to make a proper addition, else the addition it did make would have been treated as void and not merely irregular, and the judgment of the Circuit Court affirmed. The binding force of such construction of a constitutional provision as is here shown to have taken place with respect to the provisions now relied upon is beyond question. *State* v. *Harden,* 62 W. Va. 313; *Ward & Co.* v. *County Court,* 51 W. Va. 102; *Wilson* v. *Rose,* 40 W. Va. 278; *Moundsville* v. *Fountain,* 27 W. Va. 182; *Ex parte Bornee,* 76 W. Va. 360; *Scottish Union Ins. Co.* v. *Winchester,* 110 Va. 451; *Button* v. *State Cor. Com.,* 105 Va. 634.

The legislative purpose in the enactment of the statutory provision in question is obvious. It was prevention of the inequality in assessments, which was formerly corrected by the state board of equalization, after completion of the assessments in all of the counties. To permit land to be valued at one-half of its actual value in some counties and its full value in others would make property owners contribute unequally to the burdens of state government, in violation of the mandate of Sec. 1 of Art. X of the Constitution. In providing a state board of equalization under the old system of decennial reassessments, the Legislature endeavored to comply with that mandate, for the inequalities were flagrant, glaring and destructive of the private constitutional rights of tax-payers. Now that the assessments of real estate are made annually and completed barely in time for the levying of the taxes each year, the former method of equalization is either impracticable or inexpedient, wherefore the Legislature has merely devised and ordained, by this provision, a similar method for accomplishment of the same purpose. It has vested a directing and supervising power in a state official of wide, thorough and special experience in all matters of taxation, whether state or local in their nature. The Legislative power over the subject cannot be denied merely because it has invoked a preventive, instead of what is substantially a corrective, method, nor because it exerts the power through one man instead of a commission or tribunal composed of several, nor because that man is a permanent

state official instead of a citizen specially appointed. All such matters are within the domain of legislative discretion. Who is better qualified to know whether a substantially uniform basis of valuation has been adopted in all counties of the State, or has better facilities for inquiry and determination as to that matter, than an officer under whose supervision and direction the assessments are made? Manifestly, there is no difference in principle between a preventive direction and a corrective remedy, in respect of legislative power. No principle is perceived on which power to execute the constitutional mandate to make taxation equal and uniform can be denied. This provision, whether wise or not, is a means to that end. The Tax Commissioner's finding of inequality may be only an administrative act in the process of assessment, subject to overthrow by a proper appeal to the judicial power of the State, as in the case of any improper assessment. As to its character, we are not called upon to determine anything, beyond the question of its validity as a step in the assessment of property. It may be that the Commissioner's interference can be successfully resisted by an assessor who is able to show that he has neither neglected, failed nor refused properly to perform his duty. So far, it is assumed in this discussion and upon this inquiry, that the respondent has not performed his duty, and it is only in such cases that the statute in terms authorizes the action taken by the relator. The Legislature has, in terms, only provided for performance by another, of his omitted duty, in such manner as will prevent private injury and a grave public wrong, defeat of an important provision of the organic law. Though we have no occasion now to inquire what remedy tax-payers may have for their protection, in the event of an arbitrary and groundless interference by the State Tax Commissioner, under a claim of authority by virtue of this statute, it may be observed that right of a hearing by the county board of review and equalization and of appeal from its action to the Circuit Court on questions of valuation, is secured to them by other provisions of the statute.

Although there may be in some of our decisions language

broad enough to justify argument in favor of the judicial character of an assessment of property for the purposes of taxation, it can be safely asserted that, as a matter of adjudication, it has no such character, and also that equally clear and strong denials thereof may be found in the examination of our decisions. In every case in which the subject has been adverted to, the question of right of review in this court or the circuit courts, or the right of a tax-payer to attack an assessment collaterally, has been the subject of inquiry and determination. In the former class of cases, the character of the original assessment was not properly involved nor necessarily treated as having been involved. In the latter, the decisions turned upon the performance or non-performance of conditions precedent, not the character of the assessor's act.

That an assessor is not a judicial officer, within the meaning of the Constitution is clear. He is not mentioned in Art. VIII, dealing with and defining the judicial department. The office is provided for in Art. IX, creating local executive and administrative officers, and not a word in that article signifies intent to vest in it any judicial function or power. It is no doubt within the legislative power to make the matter of taxability and valuation subjects of judicial cognizance, but it need not do so at the inception of the procedure for taxation. The subjects are not inherently judicial in the sense that all preliminary steps involve the performance of judicial functions. Award of a judicial inquiry as to the validity of an assessment, on either ground, after it has been completed or even later satisfies the requirement of due process of law. *Webb* v. *Ritter,* 60 W. Va. 193, 230; *State* v. *Harman,* 57 W. Va. 447; *State* v. *Jackson,* 59 W. Va. 558; *State* v. *Swann,* 46 W. Va. 128; *Wiant* v. *Hays,* 38 W. Va. 681; *King* v. *Mullen,* 171 U. S. 404. Whether it is wise or expedient to postpone the inquiry until that stage of the proceeding is a question lying exclusively within the province of the Legislature, in the absence of a constitutional guaranty or limitation restricting its powers. No such guaranty or limitation is found in the Constitution, nor is there a suggestion of legislative intent, in any of our statutes, to impart any

judicial quality to an assessment, until it reaches the county board of review and equalization. Up to that point, no evidence is taken or preserved, nor any right of formal hearing accorded. It is all ex parte. Of course, the assessor performs mental functions, ascertains facts and exercises judgment, but such acts do not of themselves make his action judicial. *Webb* v. *Ritter*, 60 W. Va. 193, 211. These principles and conclusions make it manifest that the statute in question does not devolve judicial duties upon an executive officer and thus combine the executive and judicial departments of the government, in violation of Art. V of the Constitution.

From these conclusions, it necessarily follows, that the federal and state guaranties of due process of law are not violated by the procedure authorized by this statute. Nor does it abridge or deny any constitutional or statutory right of the respondent.

If, as the return assumes, an assessor proceeded against in the manner prescribed by the statute, may successfully resist the State Tax Commissioner's interference, by refutation of the charges of neglect, failure and refusal to perform his duty, the effort to do so is futile in this case, by reason of omissions disclosed and admissions made in the return filed. It makes no claim of assessment in Fayette County, on the basis of values in other counties. We judicially know the real estate of that county is of the same general character and has the same elements of value as that of many other counties. The writ charges refusal of the respondent to cooperate with the relator and the other assessors in an effort to effect equality and uniformity in valuation, by assessments at true and actual value, and the return admits refusal to comply with the directions of the relator, which presumptively are the same as those given to the assessors of the other 54 counties of the State and obeyed by them. This amounts virtually to an admission that the assessments in Fayette were made by the respondent on a basis different from that adopted in the other counties. While claiming to have assessed the real estate according to true and actual value, the return virtually admits that no assessment of it

has been made for the year 1922. The valuations for the year 1921 were adopted for the year 1922, upon the argument and contention that they are now correct valuations. As has been shown a pretended assessment of that kind made in Mercer County, under the reassessment act of 1899, was rejected by the state board of equalization, in 1900, and, by the Legislature, in 1901.

Being of the opinion that the statute is valid and that the respondent's return fails to show due performance of duty, the court, without deciding whether interference could be defeated by disclosure of full performance of duty by the respondent, awarded a peremptory writ, requiring him to deliver the books and papers of his office, to the special assessor, for use in the reassessment ordered.

*Writ awarded.*