294 S.E.2d 434

**STATE ex rel. Herschel H. ROSE III, State Tax Commissioner, etc.**

v.

**M. J. "Jack" FEWELL, Assessor, etc., et al.**

No. 15583.

Supreme Court of Appeals of West Virginia.

July 2, 1982.

**448**

Chauncey H. Browning, Jr., Atty. Gen., Jack C. McClung, Deputy Atty. Gen. and Robert P. Howell, Asst. Atty. Gen., Charleston, for petitioner.

Leo Catsonis, Charleston, for respondents.

McGRAW, Justice:

This is an original proceeding in mandamus. The petitioner is Herschel H. Rose III, the state tax commissioner. The respondents are M. J. "Jack" Fewell, the Putnam County assessor; and Ronald K. Brown, Ralph B. Allen, and O. L. "Leff" Moore, all Putnam County commissioners. The tax commissioner seeks a writ of mandamus compelling the respondents to enter lawful property assessments for the 1981 assessment (1982 tax) year. The respondents admit that current assessments do not meet the requirements of law. The tax commissioner asks this Court either to require the respondents to turn over the county property books so that he may make the necessary adjustments or, in the alternative, that the respondents be forced to make those adjustments. We grant the writ.

### I.

W.Va.Code § 18–9A–11(f) requires the tax commissioner to appraise all nonutility property in the state and to provide county officials with the results of that appraisal.

On June 30, 1981, the tax commissioner informed the respondents by letter of the results of a new appraisal of property in Putnam County. The tax commissioner's letter detailed the aggregate appraised valuation per class of property and specified the total minimum amount of assessed valuation per class did not meet the requirements of law. The appraisals were to be effective for the assessment year beginning July 1, 1981, the day property officially was valued for property taxation for the 1982 tax year. From July 1, 1981, to January, 1982, the Putnam County assessor valued property and entered the assessed valuations on the property books. W.Va.Code §§ 11–3–1, –19 (1974 Replacement Vol.). The county commission, sitting as the Board of Equalization and Review pursuant to W.Va.Code § 11–3–24, approved these valuations in February, 1982. Subsequently, the assessor transmitted the assessments to the tax commissioner for his review. The tax commissioner informed the respondents May 20, 1982, that the assessments were unlawful for Class II, III, and IV property. The tax commissioner asked the respondents to take corrective action. No corrective action was taken. Acting under his authority as chief inspector and supervisor of public offices, W.Va. Code § 6–9–7 (1979 Replacement Vol.), the tax commissioner served a subpoena *duces tecum* on Mr. Fewell, the county assessor. The subpoena directed Mr. Fewell to report to the Putnam County state police headquarters at Winfield with the property books. The Putnam County assessor failed to appear or to deliver the property books. As a result, the tax commissioner instituted this action seeking a writ of mandamus.

### II.

At the outset, the relationship between this case and our recent decision in *Killen v. Logan County Commission*, 170 W.Va. 602, 295 S.E.2d 689 (1982), must be noted. Both cases involve W.Va.Code § 18–9A–11(f), the provision which results in assessment of property at a fraction of

its appraised value.[1] In *Killen,* we held that the statutory equation of fractional assessment with assessment at market value violated the state constitution's guarantee of "equal and uniform taxation ... according to value." W.Va.Const. art. 10, § 1. We have, however, applied that decision prospectively, beginning with assessments made at the start of the new valuation-levying cycle.[2] As a result of our decision in *Killen,* the issue in this case becomes whether the tax commissioner has authority to direct county assessors to enter what he considers to be lawful assessments.

■ The West Virginia Constitution confers the power to tax upon the Legislature. W.Va.Const. art. 10, §§ 1, 5, 9. The Legislature has prescribed in detail the assessment process via statutory enactments contained in chapters 6, 11 and 18 of the Code. The assessment process contemplates a democratic method of assessment in which each property owner is an active participant.

The first step in the assessment process prescribed by statute mandates that the assessor "shall call upon every person in the territory" subject to taxation. W.Va. Code § 11–3–2. The assessor must furnish a property listing form to the taxpayer. The property owner must then provide "a full and complete description of all of the real estate and personal property of which he was the owner on the first day of July of the current year, fixing [under oath] what he deems to be the true and actual value of each item of property ...." *Id.* *See also* W.Va.Code §§ 11–3–12, –13. Thus, the property owner lists what he owns and swears to its worth. W.Va.Code §§ 11–3–2, –12. Until the assessor has called upon every property owner in the county and obtained their valuations, the assessment process is incomplete. If the assessor furnishes the property listing and calls upon the taxpayer, the property owner's failure to list and value his property may result in a monetary fine, payment of taxes and forfeiture of standing to challenge assessments imposed by the county assessor. W.Va.Code § 11–3–10.

■ The next step is the assessor's determination of the property's assessed value. County assessors must assess property at its "true and actual value." W.Va. Code § 11–3–1. As we have explained in *Killen,* the adjectives "true and actual" are superfluous verbage which emphasize the fact that "value" means "worth in money." *Killen v. Logan County Commission, supra.* In determining the property's market value, the taxpayer's valuation provides the assessor with a guide to that monetary figure. W.Va.Code § 11–3–2. The Legislature has provided for democratic self-assessment, and has given the tax commissioner authority to make the final determination of "true and actual value." Any conflict between the taxpayer's valuation and the tax commissioner's appraisal is to be resolved in the tax commissioner's favor. *Killen v. Logan County Commission, supra.*

Once the assessments are entered in the property books by the assessor, individual property owners may challenge their correctness before the county commission sitting as a Board of Equalization and Review. W.Va.Code § 11–3–24. The Board may increase or decrease assessments if they are found not to be at "true and actual value." *Id.* If the taxpayer is not satisfied with the Board's action, he may seek judicial review in circuit court. W.Va. Code § 11–3–25.

■ Establishment of assessments by county assessors and Boards of Equalization and Review is subject to review and

---

**1.** As originally enacted, W.Va.Code § 18–9A–11(f) established a 50 percent minimum assessment-to-appraisal ratio. 1958 W.Va. Acts ch. 5. In 1961, the Legislature amended the law by setting a 100 percent maximum cap on the ratio. 1961 W.Va. Acts ch. 41. The Legislature amended the statute again in 1980 by increasing the minimum percentage to 60 percent. 1981 W.Va. Acts ch. 5. The 60 percent requirement became effective with assessments made as of July 1, 1981.

**2.** For a detailed description of the valuation-levying cycle in West Virginia, *see Killen v. Logan County Commission,* 170 W.Va. 602, 295 S.E.2d 689 (1982).

correction by the state tax commissioner. The Legislature has provided this state officer with supervisory and enforcement authority over the assessment process. W.Va.Code §§ 6–9–1, 11–1–2, 11–3–1, 18–9A–11(g); *State ex rel. Hallanan v. Rocke*, 91 W.Va. 423, 113 S.E. 647 (1922). For example, W.Va.Code § 11–3–1 authorizes the tax commissioner to reassess property in a county upon the failure of the assessor to comply with the law.

Thus, the tax commissioner oversees an assessment scheme which encompasses the individual property owner, the county assessor and county commission. The system provides for three valuations: the property owner's initial appraisal of his property's worth, the assessor's assessed value, and the tax commissioner's appraisal value.

### III.

We now turn to the merits of this case. Our initial question is whether the petitioner is entitled to the relief prayed for by a writ of mandamus. Generally,

> [b]efore this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear legal right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law.

Syllabus Point 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981). The facts of this case and the applicable statutory provisions must be examined in light of these factors.

■ To prevail, the tax commissioner must show that he possesses a "clear legal right" to the relief. It is well-settled that mandamus lies to require a public official to discharge a non-discretionary duty. *State ex rel. Bagley v. Blankenship*, 161 W.Va. 630, 246 S.E.2d 99 (1978). Moreover, this Court has affirmed the tax commissioner's authority over assessors and county commissioners in regard to property assessments. In *State ex rel. Hallanan v. Rocke*, 91 W.Va. 423, 113 S.E. 647 (1922),

the tax commissioner had appointed a special assessor pursuant to state law to value property in Fayette County. The elected county assessor refused to furnish property books and other material to the tax commissioner's appointee. In a mandamus action brought by the tax commissioner, the assessor contended that the Legislature could not give an appointed state official supervisory power over an elected, constitutionally-created officer. W.Va.Const. art. 9, § 1.

The Court rejected that argument, finding that article 10, section 1 of the West Virginia Constitution contained an "express recognition of full legislative power and authority over the subject of valuation of property for purposes of taxation ...." *Hallanan v. Rocke*, 91 W.Va. at 428, 113 S.E. at 649. Thus, the Legislature could require the tax commissioner to supervise and correct actions or inactions taken or not taken by county officials. We affirmed the tax commissioner's authority over assessment matters in *Pauley v. Kelly*, 162 W.Va. 672, 255 S.E.2d 859 (1979). There, we specifically stated that the tax commissioner had the authority to "proceed to enforce the provisions of W.Va.Code § 18–9A–11 ...." 162 W.Va. at 714, 255 S.E.2d at 881.

The Legislature has used its constitutional authority to vest the tax commissioner with specific power to supervise and correct actions taken by county officials in the assessment process. W.Va.Code § 6–9–1 designates the tax commissioner as the "chief inspector and supervisor of public offices ...." The tax commissioner has the duty "to see that the laws concerning the assessment and collection of all taxes and levies ... are faithfully enforced." W.Va.Code § 11–1–2 (1974 Replacement Vol.). The statute also requires him to "give such information and *require* such action as will tend to produce full and just assessments throughout the state ...." *Id.* (emphasis added). Moreover, the tax commissioner is authorized to take action to "more effectively aid and supervise the assessors and the county [commissions] in their work of assessment and valuation of property for purposes of taxation." *Id.*

Other statutes confer additional supervisory and enforcement authority to the tax commissioner. W.Va.Code § 11–3–1 authorizes him to "order or direct a reassessment of any or all of the property" if the assessor fails to assess holdings at "true and actual value." Special assessors may be appointed to conduct the reassessment. *Id.* More specifically, W.Va.Code § 18–9A–11(g) directs that the tax commissioner "*shall* enter the county and fix the assessments ...." upon the assessor's and county commissioners' failure to comply with the law. (Emphasis added).

■ These statutes demonstrate that the Legislature, pursuant to authority given it by article 10 of the West Virginia Constitution, has clothed the tax commissioner with general authority and responsibility for assessment. The tax commissioner is the state official ultimately responsible for ensuring equitable assessment in this state. The Legislature has imposed a mandatory duty upon the tax commissioner to correct assessments once the responsible county officials have failed to perform their legal duties. W.Va.Code § 18–9A–11(g). Therefore, the tax commissioner has the "clear legal right" to require the respondents to comply with the law.

[7] These same statutes conclusively show that the respondents have a legal duty to do what the tax commissioner seeks to compel. The Legislature has directed that "[a]ll property shall be assessed annually ... at its true and actual value ...." W.Va.Code § 11–3–1. The county commission must review assessments fixed by the assessor and "shall fix [an assessment] at the true and actual value" should the assessor's assessment prove incorrect. W.Va.Code § 11–3–24. As we have held repeatedly, the use of the word "shall," without any modification, unquestionably makes the direction therein mandatory. *Killen v. Logan County Commission, supra.* Therefore, the respondents are under a clear legal duty to fix individual assessments as required by law.

The third element which must be shown in order for a writ of mandamus to issue is lack of an adequate alternative remedy at law. Existing remedies must be more than theoretical. "While it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient and effective, mandamus will lie." Syllabus Point 4, *Cooper v. Gwinn, supra.* Additionally, the trend in this Court has been to enlarge the scope of mandamus, especially where there is an urgent question of public policy or where there is no reason for delaying adjudication of the issue by the highest court of the State. *UMWA v. Miller,* 170 W.Va. 177, 291 S.E.2d 673 (1982).

In this case, the tax commissioner issued the subpoena pursuant to his authority as chief inspector and supervisor of public offices. W.Va.Code § 6–9–7. He could have sought enforcement of that subpoena in the Circuit Court of Putnam County by obtaining an order of attachment requiring production of the requested documents. W.Va.Code § 57–5–5 (1966). No benefit, however, would be achieved by requiring the tax commissioner to proceed in the lower courts. As in *Killen v. Logan County Commission, supra,* this case presents important issues regarding who has ultimate authority and responsibility for determining accurate and equitable assessments.

Additionally, time is of the essence in this case. The assessments at issue were made as of July 1, 1981. Taxes based on those assessments will be due in the near future. The Putnam County sheriff must begin issuing tax notices by July 15, 1982. W.Va.Code § 11A–1–6 (1974 Replacement Vol.). Changes in assessments must be made as soon as possible so that the tax collection process may proceed on schedule.

IV.

■ Having determined that mandamus is an appropriate remedy in this case, we must next decide what relief shall be afforded. The tax commissioner has asked that we order the respondents either to turn over property books to him so that he may fix the assessments himself or that we order the respondents to comply with the

law by adjusting assessments on the books. The tax commissioner is entitled to utilize either approach at his discretion. However, the tax commissioner has already chosen the method of enforcement he wishes to pursue. Acting under the authority granted him by W.Va.Code § 6–9–7, the tax commissioner has issued a subpoena for production of the Putnam County property books at the Winfield state police headquarters, which the respondents refused to obey. We find that the tax commissioner is entitled to an order compelling compliance with his subpoena.

As the respondents accurately point out, W.Va.Code § 11–2–8 (1974 Replacement Vol.) directs that "the official books and papers of the assessor shall remain as the permanent records of his office . . . ." The tax commissioner, however, does not seek to obtain the property books for eternity. The Legislature has specifically provided that the tax commissioner, in his role as chief inspector and supervisor of public offices, or his assistants "shall have power and may exercise all the authority to issue subpoenas and compulsory process, and . . . to compel the attendance of witnesses and the production of books and papers before him at any designated time and place, selected in their respective county . . . ." W.Va.Code § 6–9–7. Therefore, the selection of the Winfield police barracks as the delivery point for the property books is proper, provided that the tax commissioner or an assistant would be there to receipt them. The tax commissioner is entitled to temporary possession of the property books in order to adjust the assessments to comply with the law.

█ We wish to make clear, however, that in the proper circumstances the tax commissioner would also be entitled to the alternative relief prayed for. As noted previously, the respondents are under a clear legal duty to set assessments as required by law. W.Va.Code §§ 11–3–1; 18–9A–11(f). They must perform these duties as they have no discretion to set taxation policy in this state. *Killen v. Logan County Commission, supra.*

The tax commissioner is authorized either to require the delivery of property books to himself or a staff member or to direct that the appropriate county officials enter lawful assessments. Additionally, he may "enter the county" as provided in W.Va.Code § 18–9A–11(g) and adjust the assessments himself. If he chooses this latter approach, the responsible county officials shall ensure that the tax commissioner or his personnel are provided with all the necessary information to secure compliance with the law. The property books are public documents and as such are available to the public for inspection. W.Va.Code § 29B–1–2(4) (1980 Replacement Vol.). The tax commissioner may inspect these documents at any time of his choice at the county courthouse. Should he desire to do so, the tax commissioner or his staff will have first priority on their use.

█ All county officials involved in the taxation process, the assessor, the county commissioners, and the sheriff, have a duty to comply with the law requiring equal and uniform taxation. Should county officials be directed to adjust unlawful assessments and refuse or fail to do so, they can be removed from office. *Killen v. Logan County Commission, supra.* Additionally, the Legislature has authorized the tax commissioner to hire "special assessors" to secure achievement of the law and to bill the county commission for the expenses incurred in such action. W.Va.Code § 11–3–1. Thus, the tax commissioner may use his present staff or hire additional personnel to complete the assessor's job should that situation present itself.

IV.

In his prayer for relief, the tax commissioner asked "that such other and further relief be granted to your petitioner as this Court may deem appropriate or as justice may require." The tax commissioner also must comply with the law. W.Va.Code § 18–9A–11(c) contemplates that the tax commissioner shall have conducted a reappraisal of all nonutility property in the state by 1967. Moreover, the statute requires the tax commissioner to update such appraisals yearly. The record shows that

this has not been done. The tax commissioner must proceed with all deliberate speed to comply with the law. All reappraisals by the state tax commissioner must be based on valuation factors calculated in the same year. We noted three years ago in *Tug Valley Recovery Center, Inc. v. Mingo County Commission*, 164 W.Va. 94, 261 S.E.2d 165, 174 n.5 (1979), that the tax commissioner had not complied with the law. It is apparent from this case and the lower court's decision in *Pauley v. Bailey*, Civil Action No. 75–1268 (Kanawha County Circuit Court, May 11, 1982), that the tax commissioner has not met this statutory obligation defined by the Legislature.

The Legislature has prescribed the assessment process and the tax commissioner's role in that system. In the plain meaning of the law, the tax commissioner is required to oversee the assessment process in the 55 counties. In this role, the tax commissioner plays the role of the "chief inspector and supervisor," and is ultimately responsible for all assessments in West Virginia. W.Va.Code § 6–9–1. He has the duty to "see that the laws concerning the assessment and collection of taxes and levies ... are faithfully enforced." W.Va. Code § 11–1–2. It is imperative that every public official with a role in the assessment process must do his job properly and reasonably. Without such diligence, equal and uniform taxation cannot occur.

For the reasons stated above we grant the writ and order the respondents to comply immediately with the tax commissioner's subpoena requiring production of the Putnam County property books. The Legislature has vested the tax commissioner with final authority over the assessment process. It is his duty to ensure that county assessors and county commissions comply with the law.

Writ granted.