THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES LEWIS *et al.*, Defendants-Appellants.

Third District   Nos. 76-108, 76-199, 76-200 cons.

Opinion filed February 15, 1979.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellants.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On September 6, 1973, a disturbance took place at Stateville Penitentiary in which several guards were assaulted and taken hostage and an entire cellblock was held under prisoner control. As a result of the disturbance the Will County grand jury returned indictments against 11 inmates. All 11 prisoners were tried together by a jury in the Circuit Court of Will County, and five were found guilty. The present case involves the appeals of three of the five prisoners who were convicted. James Lewis was found guilty of aggravated battery and a violation of section 3—6—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—4(a)), which relates to the enforcement of prison discipline. He was sentenced to concurrent terms of one to two years on the battery conviction and two to six years for the Code violation. Jesse Thompson and Ford Ransom were also found guilty of violating section 3—6—4(a). Thompson was sentenced to a term of one to three years and Ransom to a term of two to six years. All sentences were to run consecutively with the sentences the men were currently serving.

■■■ Defendants' first contention on appeal is that section 3—6—4(a) is vague and indefinite and, therefore, violative of the due process clauses of the United States and Illinois Constitutions. The challenged section provides:

"§3—6—4(a). Enforcement of Discipline—Escape.) (a) A committed person who escapes or attempts to escape from an institution or facility of the Adult Division, or escapes or attempts to escape while in the custody of an employee of the Adult Division, or holds or participates in the holding of any person as a hostage by force, threat or violence, while participating in any disturbance, demonstration or riot, causes, directs or participates in the destruction of any property is guilty of a Class 2 felony." (Ill. Rev. Stat. 1975, ch. 38, par. 1003—6—4(a).)

According to the defendants, the language of this statute fails to adequately specify the conduct it proscribes and fails to provide an ascertainable standard for its enforcement. Defendants object particularly to the use of the words "participation" and "disturbance," claiming that these words are so overbroad as to allow application of the statute to wholly innocent acts.

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (*United States v. Harriss* (1954), 347 U.S. 612, 617, 98 L. Ed. 989, 996, 74 S. Ct. 808, 812.)

However, impossible standards of specificity are not required. (*People v. Schwartz* (1976), 64 Ill. 2d 275, 356 N.E.2d 8.) As Justice Marshall so aptly stated, "Condemned to the use of words, we can never expect mathematical certainty from our language." (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300.) The legislature is not required to particularize all of the myriad kinds of conduct that may fall within a statute and the fact that there may be borderline cases wherein a degree of uncertainty exists does not render the statute unconstitutional as to conduct about which no uncertainty exists. (*People v. Witzkowski* (1972), 53 Ill. 2d 216, 290 N.E.2d 236; *People v. Vandiver* (1971), 51 Ill. 2d 525, 283 N.E.2d 681.) In deciding whether a statute meets due process requirements a court must consider not only the language of the statute itself, but also the legislative objective and the evil the statute seeks to remedy. *Schwartz.*

We believe section 3—6—4(a) meets due process standards. The legislative objective in enacting the statute is clear. The statute, as applicable to the case at bar, is intended to insure both the orderly administration of correctional centers and the safety of persons therein by making it a crime for inmates to participate in the holding of hostages while engaging in a prison riot or disturbance. Although the words "participate" and "disturbance" might be considered too vague if found

in a general "breach of the peace" ordinance, they are sufficiently precise in a statute written specifically for the prison context, where the prohibited disturbances are easily measured by their impact on the normal activities of the prison. See *Grayned*, 408 U.S. 104, 111, 33 L. Ed. 2d 222, 229, 92 S. Ct. 2294, 2301.

Moreover, there is no question that defendants' conduct in this case fell within the proper scope of the statute. Defendants suggest that an inmate who left his cell solely to observe the events could be found to be a participant in a disturbance under the statute. But, even a casual perusal of the record in this case clearly indicates that such was not the conduct of these defendants. On the contrary, the record indicates that they were among the most active participants in both the holding of the hostages and the disturbance as a whole. "We will not * * * conjecture as to the statute's application to situations less clear." *Vandiver*, 51 Ill. 2d 525, 530, 283 N.E.2d 681, 684.

In sum, we conclude that section 3—6—4(a) is sufficiently definite to give a person of ordinary intelligence fair notice of what conduct is proscribed. The statute does not offend due process requirements, and it was properly applied to the present defendants whose conduct clearly fell within its proscription.

Defendants next argue that the trial court erred in denying, without an evidentiary hearing, their pretrial motion to dismiss the indictments on the grounds of discriminatory prosecution. In their motion defendants claimed they were improperly selected for prosecution based on their race, and their exercise of their first amendment rights of free speech and free association. Included in the motion were statistics indicating that a large number of inmates participated in the September 6 disturbance and received internal disciplinary "tickets" as a result of that participation, yet were not indicted. The motion noted that only one of the 11 inmates indicted was white and goes on to allege that several of the defendants were indicted solely because of their leadership in certain black prisoner groups or solely because they participated in the grievance committee and press conference which took place on the day of the disturbance. Defendants contend these statistics and allegations established a *prima facie* case of discrimination and entitled them to an evidentiary hearing. We do not agree.

It is a fundamental tenet of criminal law that the decision whether or not to prosecute an individual rests in the discretion of the prosecutor. (*Oyler v. Boles* (1962), 368 U.S. 448, 456, 7 L. Ed. 2d 446, 453, 82 S. Ct. 501, 506.) "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." In fact, the exercise of some selectivity in enforcement is a necessary prerequisite of any modern system of criminal justice. Nevertheless, prosecutorial discretion is limited by constitutional protections. The State may not deliberately base

its decision to prosecute an individual on the constitutionally protected grounds of race, religion, or the exercise of first amendment rights. (*United States v. Falk* (7th Cir. 1973), 479 F.2d 616; *United States v. Berrigan* (3d Cir. 1973), 482 F.2d 171; *United States v. Steele* (9th Cir. 1972), 461 F.2d 1148.) However, there is a presumption that any prosecution for violation of the criminal law is undertaken in good faith. (*Falk.*) To overcome this presumption and to justify the holding of an evidentiary hearing, the burden is on the defendant to present sufficient facts to make out at least a *prima facie* case of improper discrimination. *United States v. Scott* (9th Cir. 1975), 521 F.2d 1188.

> "This requires that appellant first demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted. Secondly, appellant must show that his selection was based on an impermissible ground such as race, religion or his exercise of his first amendment right to free speech." *Scott*, 521 F.2d 1188, 1195.

■■ In the present case defendants' motion satisfied the first requirement by stating facts which indicated that other inmates who participated in the September 6 disturbance were not criminally prosecuted for their conduct. Defendants' motion did not, however, meet the second requirement. Here, there was no showing that the selection for prosecution was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. Included in the motion were general assertions such as, "Several of the defendants were indicted solely because of their membership and leadership in the Black P Stone Nation and the Disciples," and "Several of the defendants were indicted solely because of their work in formulating a list of grievances." But the motion did not include sufficient facts to make out a *prima facie* case in support of these general allegations. Defendants claim they were selected for prosecution based on their race. However, the only fact cited in support of this claim is the fact that only one of the eleven defendants was white. This is clearly insufficient to establish a case of racial discrimination, especially in light of the fact that the great majority of prisoners participating in the disturbance were black. Defendants allege that "several" of them were indicted "solely" because of work in formulating a list of grievances, yet in their motion defendants themselves note that several other inmates who worked on the grievance list were not indicted.

The cases cited by defendants as supporting their demand for an evidentiary hearing are readily distinguishable. For example, in *Falk*, the court noted several unrebuttable facts supporting the defendants' claim of discriminatory prosecution, including a published governmental policy statement indicating that only active resistors to the war in Viet Nam were to be prosecuted for failure to possess a draft card. Furthermore, the case

at bar presented a fluid riot situation with numerous inmates participating in various and diverse ways. Under such circumstances the prosecutor must be given broad discretion to determine who were the most flagrant violators and which among those he could successfully prosecute. We do not think the prosecutor abused his discretion in this case and we do not think the trial court erred in denying defendants' motion without an evidentiary hearing.

■■ Defendants' third contention on appeal is that the trial court should have dismissed the indictments against them on the grounds of double jeopardy. As a result of their participation in the September 6, 1973, disturbance, defendants were subjected to internal prison disciplinary proceedings in which their accumulated statutory good time was revoked. Prior to trial defendants moved to dismiss the indictments, arguing that a combination of administrative discipline and criminal prosecution for the same conduct constituted a violation of the double jeopardy clauses of the United States and Illinois constitutions. The trial court rejected defendants' argument, and we believe properly so.

In *People ex rel. Day v. Lewis* (1941), 376 Ill. 509, 34 N.E.2d 712, the petitioner in a *habeas corpus* proceeding had been found not guilty of murdering a fellow inmate at Stateville Penitentiary. Following this acquittal, petitioner's accumulated good time was revoked by prison officials as a result of his involvement in the same incident. Petitioner claimed that the forfeiture of his earned good time constituted the improper imposition of punishment upon him for the same crime of which he had been previously acquitted. The supreme court rejected this claim, stating:

> "The function of the executive department, on the other hand, is to administer the sentence imposed by the court and to apply, as an inherent part of every indeterminate sentence, the rules pertaining to the diminution of punishment for good conduct. [Citations.] An indeterminate sentence is for the full term allowed by law for the crime, and the administrative department, in deciding that a prisoner's conduct does not merit his release for good behavior after serving less than the full term, cannot be said to increase the sentence. [Citation.] Although the forfeiture may flow from conduct involving a criminal offense, the prisoner is neither tried nor sentenced for a violation of the criminal law, and his punishment consists solely in the serving of the balance of his sentence originally imposed." (*Day*, 376 Ill. 514, 34 N.E.2d 712, 714.)

Defendants in the present case recognize the adverse nature of the *Day* decision, but argue that it is no longer good law in light of *Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056, wherein the Supreme Court held the double jeopardy clause of the Federal constitution directly applicable to the States through the fourteenth

amendment. We find the defendants' argument to be without merit.

The double jeopardy clause of the fifth amendment has, of course, always been applicable to Federal criminal proceedings. Yet the Federal courts both before and after *Benton* have consistently held, "Administrative discipline of a prisoner does not prohibit criminal prosecution for the same event." (*United States v. Cordova* (5th Cir. 1969), 414 F.2d 277; *Mullican v. United States* (5th Cir. 1958), 252 F.2d 398; *United States v. Shapiro* (7th Cir. 1967), 383 F.2d 680; *Pagliaro v. Cox* (8th Cir. 1944), 143 F.2d 900.) The reasoning of the Federal decisions is consistent with the approach taken in *Day*. For example, in *Shapiro*, the Seventh Circuit, adopting the language of the Eighth Circuit in an earlier case, stated:

> " 'There is no double punishment. The two matters were entirely distinct and separate. The allowance of good time, until earned for the entire term * * * is a privilege * * *. The existence or the forfeiture of good time is in no sense dependent upon whether the misconduct also may be a criminal act. * * *' " (*Shapiro*, 383 F.2d 680, 683.)

Defendants cite for us only one case where a court has held that administrative disciplining of convicted prisoners and criminal prosecution for the same conduct constituted double jeopardy. (*In re Lamb* (1973), 34 Ohio App. 2d 85, 296 N.E.2d 280.) Other appellate courts of the same State have declined to follow the *Lamb* decision. (*State v. Proctor* (1977), 51 Ohio App. 2d 151, 367 N.E.2d 908.) We also decline to follow that decision and hold that the trial court properly denied defendants' motion to dismiss on the grounds of double jeopardy.

Finally, defendants claim it was reversible error for the trial court to respond to inquiries from the jury without the defendants being present. During the course of its deliberations the jury submitted three separate inquiries to the trial judge. Defense counsel were present and were consulted by the judge before he responded to each of the jury's questions, but the instant defendants were not present. In its first inquiry the jury asked to examine certain objects which had not been admitted into evidence and asked to have the testimony of certain witnesses read back to them. With the agreement of both defense counsel and the prosecutors, the trial judge advised the jury that it could not examine the requested objects and that the testimony would not be read back. In its second inquiry the jury again asked to have selected portions of testimony read back to them. The prosecutor suggested that the court comply with the jury's request, but defense counsel objected and the trial judge again refused to have the testimony read back. As its final inquiry the jury asked:

> "As I understand, we have in effect ten separate trials, but in one trial. Does this mean that if we're not able to come to a decision on

one, two or three indictments, that all indictments are thrown out, or only the ones on which we do not agree?"

The trial judge advised defense counsel that he would again decline to answer the question, but he solicited their comments for the record. Defense counsel, in turn, responded that they wished to confer with their clients, who were incarcerated at the penitentiary, before commenting on the jury's question. The trial judge, noting that the question was a legal one, refused to have the defendants brought to the court. He then responded to the jury by declining to answer the question and denied the mistrial motion which followed.

■■ It is a well-established rule that a person accused of a crime has a right to be personally present at every stage of the proceeding against him from arraignment to final sentencing. (*People v. Etheridge* (3d Dist. 1976), 35 Ill. App. 3d 981, 343 N.E.2d 55.) Included within this rule is the right of the defendant to be present during any communications between the court and the jury. (*People v. Rohwedder* (5th Dist. 1967), 78 Ill. App. 2d 211, 223 N.E.2d 1; *People v. Beck* (1922), 305 Ill. 593, 139 N.E. 454.) The fact that defendant's counsel was present does not, in itself, excuse defendant's absence. (*Etheridge.*) However, to require reversal of a conviction it must be demonstrated that the defendant was prejudiced by his absence during the communication between judge and jury. (*People v. Rettig* (1972), 50 Ill. 2d 317, 278 N.E.2d 781; *People v. Pierce* (1st Dist. 1972), 9 Ill. App. 3d 153, 291 N.E.2d 58.) Prejudice is not assumed on the basis of the communication alone. *Rettig.*

In the present case we do not believe defendants were in any way prejudiced by their absence during the communications between the trial court and the jury. Defense counsel were present during each communication and, in the first two instances, concurred with or even suggested the trial court's proper response. In the final instance, defense counsel did request defendants' presence, but the jury's question was, as the trial court indicated, a purely legal one. We do not see how any information the defendants might have furnished would have aided or substantially influenced the trial court's response. Furthermore, the responses made by the trial judge were not calculated to influence the jury's decision one way or the other and were not of such a nature to raise the probability that prejudice would inherently emanate from them. (*Rettig.*) This lack of prejudice is further evinced by the fact that defendants did not raise the issue in their post-trial motion which included over 20 other claims of error.

For the foregoing reasons, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.