313 S.E.2d 409

**STATE ex rel. Braun A. HAMSTEAD**

v.

**The Honorable Pierre E. DOSTERT, Judge of the Circuit Court of Jefferson County and Donald R. Giardina, Sheriff of Jefferson County.**

**No. 16121.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 31, 1984.

Decided Feb. 7, 1984.

Opinion Concurring in Part and Dissenting in Part March 9, 1984.

Braun A. Hamstead, Pros. Atty., Charles Town, for relator.

Pierre E. Dostert and Donald R. Giardina, pro se.

McGRAW, Justice:

In this habeas corpus proceeding, the petitioner, Braun A. Hamstead, Prosecuting Attorney of Jefferson County, challenges the authority of Judge Pierre E. Dostert, Circuit Judge of the Twenty-third Judicial Circuit, to order him *sua sponte* to seek a particular grand jury indictment. The petitioner also seeks to prohibit Judge Dostert from interfering further in the presentment of the case involved before the grand jury.

The circumstances surrounding the underlying criminal action are described in an affidavit and in exhibits submitted by the petitioner. Lois Yvonne Payne, lived with her mother, Adora M. Payne, and her mother's sister, Genevieve McClain, in Jefferson County. Lois was fifty years old and had a long history of mental health problems. Genevieve was older and was also of arguable mental competency. Adora, in a statement given to police, described the altercation on August 20, 1983, between her daughter and her sister, which resulted in her sister's death:

> Mrs. McClain and my daughter were in the living room. Lois, my daughter, wanted to go to the store to get some cigarettes. Mrs. McClain then tried to lock the door to keep her (Lois) in the house. Both of them started tussling and both of them fell to the floor. I got my sister up by the hand and she walked

back to the bedroom. She was conscious. She was laying on the bed bleeding and I kept wiping her head. She kept saying that she didn't want to go to the hospital. She then went into a convulsion and I called Dr. Williams. She told me to call an ambulance. I called the ambulance and they took her to the hospital.

Lois Payne's aunt died a few days later.

At the conclusion of a hearing on September 21, 1983, Lois Payne was sent to the Weston State Hospital for psychological examination and evaluation. At the conclusion of a subsequent hearing on November 4, 1983, Judge Dostert, based upon a psychological assessment of the defendant's competency to stand trial, found that although she was not currently competent to stand trial, there was a substantial likelihood that she would become competent within six months. He then ordered her committed to Weston State Hospital for a period not to exceed six months.

On January 17, 1984, the Jefferson County Grand Jury was set to convene and begin deliberations. On January 13, 1984, Judge Dostert learned that the petitioner was going to seek a grand jury indictment for involuntary manslaughter in the Payne case. On January 14, 1984, Judge Dostert telephoned assistant prosecuting attorney, Melody Gaidrich, indicating that the petitioner should seek a murder, and not an involuntary manslaughter, indictment in the Payne case. The petitioner was informed of Judge Dostert's instructions by his assistant on January 16, 1984.

At approximately 9:15 a.m. on January 17, 1984, Judge Dostert telephoned the petitioner, ordering him to present a murder indictment and not to present an involuntary manslaughter indictment to the grand jury in the Payne case. The petitioner responded that, based upon the investigating officer's report and the evidence presented at prior preliminary proceedings in the case, the grand jury should be permitted to consider returning an involuntary manslaughter indictment. The petitioner also indicated to Judge Dostert that he

considered the matter to be solely within his discretion and that Judge Dostert's attempt to influence grand jury proceedings could be seized upon by other defendants as jury tampering. Judge Dostert replied by ordering the petitioner to appear before him in his chambers at 9:30 a.m.

When the petitioner appeared before Judge Dostert in chambers, the judge reiterated his directive. The petitioner then requested a continuance (1) to permit resolution of the issue prior to presenting any testimony to the grand jury and (2) to avoid being held in contempt of Judge Dostert's order. The request for a continuance was denied, and the judge indicated that the petitioner could do anything he wanted, because he was going to instruct the grand jury to consider only a murder indictment.

Judge Dostert proceeded to qualify, impanel, and instruct the grand jury generally on their duties and the procedures to be followed. In an admitted departure from past practice, however, Judge Dostert further instructed the grand jury that it could only consider murder indictments in homicide cases, and could not consider any lesser included offenses. Judge Dostert informed the grand jury that:

> In West Virginia, the crime of homicide is committed when a person is killed by another human being and the killing is not accidental and it is not unjustified or it is not justified under the circumstances. *You are not to consider the degrees of homicide,* first degree murder, second degree murder, voluntary manslaughter, involuntary manslaughter. Your sole determination, one, was a human being killed? Second, was it or was it not accidental? Or third, this usually is in the case of a police officer, I will instruct you further if you desire, when a police officer kills a person, the question would become, was the killing justified or unjustified? *It is for the petit jury to weigh the evidence in its entirety at a latter time and make the determination as to which degree, if any, of homicide has or has not been*

*committed.* (Emphasis added).[1]

The grand jurors were then sent to their room. The petitioner again moved for a continuance, which was again denied, and Judge Dostert ordered the petitioner to go to the grand jury room. Upon his arrival in the grand juror's chambers, the petitioner informed the grand jury of the potential problem, and asked the grand jurors to determine whether they desired to request a continuance from Judge Dostert. After deliberating for a period of time, the grand jury called the petitioner back into their chambers and delivered him a note to transmit to Judge Dostert, requesting that the court reporter read Judge Dostert's instructions to the grand jury once again.

Upon receiving this note from the grand jury, Judge Dostert entered an "Order in Mandamus" directing the petitioner to show cause why he should not immediately commence presenting evidence to the grand jury. In his written response, the petitioner stated that the grand jury had not requested to hear any formal presentments, but desired to review the court's instructions. The petitioner also reiterated his request for a continuance. Following a brief hearing on the rule to show cause, Judge Dostert ordered the petitioner to begin presenting cases to the grand jury. After the petitioner failed to respond to this order, Judge Dostert had him committed to the Jefferson County Jail at approximately 1:45 p.m. From his jail cell, the petitioner submitted a written response to Judge Dostert's inquiry concerning whether he intended to present evidence to the grand jury, stating that he did not intend to present evidence "at this time." Justice Dostert then entered a formal order, committing the petitioner to the Jefferson County Jail "until such time as he indicates that he is willing to state to the Court that he is prepared to obey the order of the Court as entered."

That same day, the petitioner, while in jail, filed his petition for a writ of habeas corpus, which was granted by this Court. At approximately 5:15 p.m., the petitioner was released from jail by Judge Dostert upon his posting of fifty dollars bond on the condition that "he will appear in the Circuit Court at all times as required by said Court during the pendency of said matter."

## I.

Article IX, § 1 of the West Virginia Constitution provides: "The voters of each county shall elect ... a prosecuting attorney ...." Article IV, § 8 of the West Virginia Constitution further provides: "The legislature ... shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers ...." Pursuant to this constitutional mandate, our legislature has provided:

> It *shall* be the duty of the prosecuting attorney to attend to the criminal business of the State in the county in which he is elected and qualified, and when he has information of the violation of *any* penal law committed within such county, he *shall* institute and prosecute all necessary and proper proceedings against the offender....

West Virginia Code § 7-4-1 (1976 Replacement Vol.). (Emphasis added).

In connection with this duty to prosecute, this Court recognized in *State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 278 S.E.2d 624, 631 (1981), that: "The duty to prosecute is qualified, however, in that the prosecuting attorney is vested with discretion in the control of criminal causes, which is committed to him for the public good and for the vindication of the public interest." This discretion extends to the determination of what type of indictment will be sought in a particular case. As we stated in *Skinner,* 166 W.Va. at 752, 278 S.E.2d at 631: "[T]he prosecutor in his discretion may decide which of several possible charges he will bring against an accused."

Part of the rationale behind this prosecutorial discretion is attributable to the public prosecutor's unique role in the criminal justice system. As is stated in Ethical Consid-

---

**1.** It should be noted that this excerpted portion of Judge Dostert's charge to the grand jury is not a proper statement of the law of homicide in this jurisdiction.

eration 7–13 of our Code of Professional Responsibility:

> The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute; (2) during trial the prosecutor is not only an advocate but he also may make decisions normally made by an individual client, and those affecting the public interest should be fair to all; and (3) in our system of criminal justice the accused is to be given the benefit of all reasonable doubts....

■ This prosecutorial discretion, however, is bounded by law. As is stated in *Skinner,* 166 W.Va. at 752–753, 278 S.E.2d at 631:

> [W]hile the prosecutor has discretion in the control of criminal cases, he must exercise that discretion so as to fulfill his duty to the people. W.Va. Const. art. 3, § 2. The courts of the State are open to all who seek redress of grievances. W.Va. Const. art. 3, § 17. As criminal offenses are offenses against the State which must be prosecuted in the name of the State, W.Va. Const. art. 2, §§ 6, 8; W.Va.Code § 62–9–1 (1977 Replacement Vol.); *Moundsville v. Fountain,* 27 W.Va. 182 (1885), the prosecutor, as the officer charged with prosecuting such offenses, has a duty to vindicate the victim's and the public's constitutional right of redress for a criminal invasion of rights. The "spirit of the law" has long been and it has long held that "[t]he public has rights as well as the accused, and one of the first of these is that of redressing or punishing their wrongs". *Ex parte Santee,* 2 Va.Cas. 363 (1823).... The prosecutor, like any other executive officer, must have sound reasons for his actions.

Similarly in Syllabus Point 2 of *State ex rel. Preissler v. Dostert,* 163 W.Va. 719, 260 S.E.2d 279 (1979), we stated, "The prosecuting attorney is a constitutional officer who exercises the sovereign power of the State at the will of the people and he is at all times answerable to them. W.Va. Const., art. 2, § 2; art. 3, § 2; art. 9, § 1." This Court has also recognized that, ultimately, "[f]ailure of the prosecutor to perform the duties imposed by W.Va.Code § 7–4–1 would make him liable under W.Va. Const. art. 9, § 4; W.Va.Code § 6–6–7 (1979 Replacement Vol.); and W.Va.Code § 11–1–5 (1974 Replacement Vol.)." Syl. pt. 5, in part, *State ex rel. Skinner v. Dostert, supra.*

In West Virginia, one important limitation upon prosecutorial discretion with respect to the determination of whether to bring charges and what charges will be brought is contained in West Virginia Code § 7–4–1, which provides that when a prosecutor "has information of the violation of *any* penal law committed within such county, he *shall* institute and prosecute all necessary and proper proceedings against the offender ...." (Emphasis added). As we recently stated in Syllabus Point 7 of *Hodge v. Ginsberg,* 172 W.Va. 12, 303 S.E.2d 245 (1983): " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982)." Similarly, in Syllabus Point 2 of *Thomas v. Firestone Tire & Rubber Co.,* 164 W.Va. 763, 266 S.E.2d 905 (1980), this Court stated: "The word 'any,' when used in a statute, should be construed to mean any." The only limitation upon the prosecutor's duty to bring criminal charges when information is received that any crime has been committed in his county is the requirement that the proceedings instituted and prosecuted be "necessary and proper."

■ When we speak of "prosecutorial discretion," we are speaking of what course of conduct is "necessary and proper" given the circumstances in a particular case. With respect to the determination of whether to seek an indictment, the ultimate criterion must be whether, in the prosecutor's professional judgment, it appears from the evidence that there is probable

cause to believe that an offense has been committed and that the defendant has committed it. *See* West Virginia Code of Professional Responsibility DR 7–103(A) (1982 Replacement Vol.): "A public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause." It has been noted that, "A probable cause standard ... is sufficiently minimal that a prosecutor should not err in deciding whether the quantum of evidence is adequate to institute criminal proceedings." American Bar Association Standards for Criminal Justice, Standard 3–3.9 Comment at 3–55 (1980). The utility of the "probable cause" standard in the prosecutor's determination of whether to seek an indictment in a particular case is evidenced by its use at the preliminary hearing stage of the criminal process. *See* West Virginia Code § 62–1–8 (1977 Replacement Vol.). With respect to the determination of whether to seek an indictment and what indictment will be sought in a particular case, the probable cause standard represents the line of demarcation between prosecutorial discretion and prosecutorial duty.

In Syllabus Point 3 of *State ex rel. Greenbrier County Airport Authority v. Hanna*, 151 W.Va. 479, 153 S.E.2d 284 (1967), this Court stated the well established rule that: "Mandamus lies to require the discharge by a public officer of a non-discretionary duty." *See also State ex rel. Rose v. Fewell*, 170 W.Va. 447, 294 S.E.2d 434, 437 (1982); *Perry v. Barker*, 169 W.Va. 531, 289 S.E.2d 423, 428 (1982); Syl. pt. 6, *State ex rel. Bagley v. Blankenship*, 161 W.Va. 630, 246 S.E.2d 99 (1978); Syl. pt. 6, *State ex rel. Kanawha County Building Commission v. Paterno*, 160 W.Va. 195, 233 S.E.2d 332 (1977); Syl. pt. 3, *State ex rel. Goodwin v. Rogers*, 158 W.Va. 1041, 217 S.E.2d 65 (1975); Syl. pt. 1, *State ex rel. The West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545 (1969). This Court has also recognized that, "Where the right sought to be enforced is a public one, mandamus can be sought by any citizen, taxpayer or voter." Syl. pt. 3, *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981); *see also Smith v. West Virginia State Board of Education*, 170 W.Va. 593, 295 S.E.2d 680, 683 (1982); Syl. pt. 1, *State ex rel. Brotherton v. Moore*, 159 W.Va. 934, 230 S.E.2d 638 (1976); *State ex rel. Brotherton v. Blankenship*, 158 W.Va. 390, 214 S.E.2d 467, 474 (1975); *Delardas v. County Court of Monongalia County*, 155 W.Va. 776, 779, 186 S.E.2d 847, 850 (1972); *State ex rel. West Virginia State Lodge, Fraternal Order of Police v. City of Charleston*, 133 W.Va. 420, 430, 56 S.E.2d 763, 768–69 (1949); Syl. pt. 3, *Prichard v. DeVan*, 114 W.Va. 509, 172 S.E. 711 (1934); Syl. pt. 2, *State ex rel. Matheny v. County Court of Wyoming County*, 47 W.Va. 672, 35 S.E. 959 (1900). As previously noted, " '[t]he public has rights as well as the accused, and one of the first of these is that of redressing or punishing their wrongs.' *Ex parte Santee*, 2 Va.Cas. 363 (1823)." *State ex rel. Skinner v. Dostert*, 166 W.Va. at 1753, 278 S.E.2d at 631.

Therefore, if a citizen believes, has reason to believe, or knows that probable cause exists to charge an individual with the commission of a particular crime, and also believes, has reason to believe, or knows that the prosecutor is failing to perform his nondiscretionary duty to act upon this probable cause, such citizen may seek by writ of mandamus to compel the prosecutor to perform his nondiscretionary duties. If a circuit judge believes, has reason to believe, or knows that probable cause exists to charge an individual with the commission of a particular crime, and also believes, has reason to believe or knows that the prosecutor is failing to perform his nondiscretionary duty to act upon this probable cause, he may complain as may any other citizen through the prosecution of a mandamus action to compel compliance by the prosecutor. Further, just as any other citizen may not preside over his own cause, so too must the complainant circuit judge follow the procedures contained in Rule XVII of the West Virginia Trial Court Rules for Courts of Record (1983 Supp.) for the appointment of another circuit judge to hear the mandamus petition.

One aspect of the probable cause limitation on a prosecutor's discretion is a prohibition against "overcharging" a criminal defendant in order to induce a guilty plea.[2] Standard 3–3.9(e) of the American Bar Association Standards for Criminal Justice (1980) provides that, "The prosecutor should not bring or seek charges greater in number or degree than can reasonably be supported with evidence at trial." Standard 3–3.9(a) of the American Bar Association Standards for Criminal Justice (1980) further provides:

It is unprofessional conduct for a prosecutor to institute, or cause to be instituted, or to permit the continued pendency of criminal charges when it is known that the charges are not supported by probable cause. A prosecutor should not institute, cause to be instituted, or permit the continued pendency of criminal charges in the absence of sufficient admissible evidence to support a conviction.

See also West Virginia Code of Professional Responsibility DR 7–103(A) (1982 Replacement Vol.); Commonwealth v. St. Pierre, 377 Mass. 650, 387 N.E.2d 1135 (1979).

One structural restraint on a prosecutor's ability to overcharge is found in West Virginia Code § 62–1–8 (1977 Replacement Vol.), which provides:

If the offense is to be presented for indictment, the preliminary examination shall be conducted by a justice of the county in which the offense was committed within a reasonable time after the defendant is arrested, unless the defendant waives examination.... If the defendant waives preliminary examination or if, after hearing, it appears from the evidence that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the justice shall forthwith hold him to answer in the court having jurisdiction to try criminal cases. If the evidence does not establish probable cause, the defendant shall be discharged....

Professionalism on the part of the prosecutor, however, through the good faith exercise of his discretionary powers, presents the most efficient mechanism for preventing overcharging in criminal cases.

In the present action, the petitioner sought to utilize self-restraint in seeking a grand jury indictment for involuntary manslaughter where all the information available to him indicated an absence of premeditation, malice, or intent. The respondent judge, however, interfered with the exercise of this self-restraint by prohibiting the grand jury from considering anything but a murder indictment in homicide cases.

In State ex rel. Miller v. Smith, 168 W.Va. 745, 285 S.E.2d 500, 506 (1981), we stated, "The grand jury is an integral part of the judicial system and enjoys a special relationship with the court by which it is convened. See State ex rel. Casey v. Wood, [156 W.Va. 329, 193 S.E.2d 143 (1972)]. Because of this special relationship the court has a particular responsibility to insure the fairness of grand jury proceedings." The primary means by which a trial court fulfills its responsibility to insure fairness in grand jury proceedings is through its instructions to grand jurors on their purpose, function, and the procedures to be followed governing their deliberations and determinations.[3] In this

2. At the other end of the spectrum, a prosecutor may abuse his or her discretion by an unreasonable failure to prosecute. See State ex rel. Skinner v. Dostert, 166 W.Va. at 753, 278 S.E.2d at 631.

3. Section 204(1) of the American Bar Association Model Grand Jury Act (1982) provides:
Upon impanelment of each grand jury, the court shall properly instruct or charge the grand jury, and shall inform the grand jury inter alia of the following:
(a) its duty to inquire into offenses against the criminal laws alleged to have been committed within the jurisdiction;

(b) its independent right to call and interrogate witnesses;
(c) its right to request the production of documents or other evidence, including exculpatory evidence;
(d) the necessity of finding credible evidence of each material element of the crime or crimes charged before returning a true bill;
(e) its right to have the prosecutor present it with draft indictments for less serious charges than those originally requested by the prosecutor;
(f) the obligation of secrecy;

regard, West Virginia Code § 52–2–6 (1981 Replacement Vol.), provides: "The grand jurors, after being sworn, shall be charged by the judge, and shall then be sent to their room."

The Fifth Amendment to the United States Constitution provides, in part, that: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ...." Similarly, article III, § 4 of the West Virginia Constitution provides that: "No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury." Our legislature has mandated that "[a]t least twelve of the grand jurors must concur in finding or making an indictment or presentment...." West Virginia Code § 52–2–8 (1981 Replacement Vol.); *see also* W.Va.R.Crim.P. 6(f). In the present case, Judge Dostert attempted to usurp the power of the grand jury by substituting his view on the proper indictment returnable for that of the required twelve members. In doing so, Judge Dostert ventured beyond the trial judge's traditional role of supervision of grand jury proceedings into the role of participation. While a circuit court has supervisory powers over grand jury proceedings to preserve the integrity of the grand jury process and to ensure the proper administration of justice, it may not prohibit grand jury consideration of offenses within any particular class of crimes.

In addition to Judge Dostert's improper interference with grand jury prerogative, his actions also unreasonably infringed upon the petitioner's discretion in determining what type of indictment would be sought in the Payne case. As previously noted, "[T]he prosecutor in his discretion may decide which of several possible charges he will bring against an accused." *State ex rel. Skinner v. Dostert*, 166 W.Va. at 752, 278 S.E.2d at 631. Absent an abuse of discretion, judicial interference with the exercise of prosecutorial judgment as to what charge to bring in a criminal prosecution is impermissible. *Bordenkircher v.*

*Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *State v. Freeland*, 295 Or. 367, 667 P.2d 509 (1983); *People v. Thomas*, 118 Mich.App. 667, 325 N.W.2d 536 (1982); *State v. Haskins*, 188 Conn. 432, 450 A.2d 828 (1982); *State v. McMahon*, 183 N.J.Super. 97, 443 A.2d 258 (1981); *State v. Bartlett*, 210 Neb. 886, 317 N.W.2d 102 (1982); *State v. Herme*, 298 N.W.2d 454 (Minn.1980); *Commonwealth v. Eisemann*, 276 Pa.Super. 543, 419 A.2d 591 (1980); *People v. Lewis*, 73 Ill.App.3d 361, 25 Ill.Dec. 436, 386 N.E.2d 910 (1979); *Commonwealth v. McKinney*, 594 S.W.2d 884 (Ky.App.1979); *People v. Evans*, 94 Mich.App. 4, 287 N.W.2d 608 (1979); *State v. Karpinski*, 92 Wis.2d 599, 285 N.W.2d 729 (1979); *State v. Worthey*, 19 Wash. App. 283, 576 P.2d 896 (1978); *Commonwealth v. United Food Corp.*, 374 Mass. 765, 374 N.E.2d 1331 (1978); *State v. Goodwin*, 116 N.H. 37, 351 A.2d 59 (1976); *State v. Murphy*, 113 Ariz. 416, 555 P.2d 1110 (1976); *State v. Pruett*, 213 Kan. 41, 515 P.2d 1051 (1973). No abuse of discretion on the part of the petitioner appears from the record in this case. In fact, given the circumstances in this case, a clear abuse of discretion might have indeed resulted if the petitioner had complied with Judge Dostert's order to present only a murder indictment.

West Virginia Code § 7–7–8 (1976 Replacement Vol.), provides, in part, that: "If, in any case, the prosecuting attorney and his assistants are unable to act, or if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act in that case." With regard to the application of this disqualification statute, we held in Syllabus Point 3 of *State ex rel. Preissler v. Dostert, supra:*

> Before a prosecuting attorney may be disqualified from acting in a particular case and relieved of the duties imposed upon him by the Constitution and by statute, the reasons for his disqualification must appear on the record, and where there is any factual question as to the propriety of the prosecutor acting in

(g) such other duties and rights as the court

deems advisable.

the matter, he must be afforded notice and an opportunity to be heard.

This Court has recognized that circuit courts have "a particular responsibility to insure the fairness of grand jury proceedings." *State ex rel. Miller v. Smith*, 168 W.Va. at 756, 285 S.E.2d at 506.

 This Court further recognizes that circuit courts may become aware of potential abuses of prosecutorial discretion which could undermine the fairness of grand jury proceedings. If a circuit judge desires to intervene in the relationship between a grand jury and a prosecutor, in the absence of a proper complaint by a concerned citizen, he can do so by bringing a disqualification motion under West Virginia Code 7-7-8 (1976 Replacement Vol.).[4] When a circuit judge is the moving party in the attempted disqualification of a prosecuting attorney under West Virginia Code 7-7-8 (1976 Replacement Vol.), he should disqualify himself under Canon 3C(1) of the West Virginia Judicial Code of Ethics (1982 Replacement Vol.), and follow the procedures contained in Rule XVII of the West Virginia Trial Court Rules for Courts of Record (1983 Supp.) for the appointment of another circuit judge to hear the disqualification motion.[5]

## II.

 We now consider whether the petitioner's refusal to obey Judge Dostert's order requiring the presentment of a mur-

der indictment in the Payne case constituted a basis for a citation of criminal contempt. In addressing a similar abuse of Judge Dostert's contempt power, this Court stated in Syllabus Point 3 of *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982):

> Where a court has jurisdiction to issue a particular order, the fact that such order is erroneous, irregular, or is improvidently rendered, does not justify one in disregarding or violating the order, and then citing the court's error as a defense to a charge of contempt. Where, however, the judge lacks jurisdiction, or is without power or authority to render the order, refusal to comply with such order may not be punished as contempt.

Judge Dostert had no *sua sponte* power or authority to order the petitioner to present only a murder indictment to the grand jury in the Payne case. Therefore, the petitioner's refusal to comply could not be punished as contempt.

## III.

 The petitioner also seeks to prohibit Judge Dostert from interfering further in the presentment of the case involved before the grand jury. Recently, in Syllabus Point 2 of *State ex rel. Green v. Dostert*, 172 W.Va. 222, 304 S.E.2d 675 (1983), this Court stated the general rule that: "'The writ of prohibition lies as a matter of right when the inferior court ... exceeds its legitimate powers.' Syllabus

---

4. We also note that when a circuit judge believes that a prosecutor's actions constitute a violation of the Code of Professional Responsibility, he has a duty to report such misconduct under Canon 3B(3) of the Judicial Code of Ethics (1982 Replacement Vol.) to the West Virginia State Bar Committee on Legal Ethics. *See State ex rel. Preissler v. Dostert*, 163 W.Va. at 728 n. 8, 260 S.E.2d at 285 n. 8.

5. This Court discussed the importance of a hearing on the record in the disqualification of a prosecutor in *State ex rel. Preissler v. Dostert*, 163 W.Va. at 732–733, 260 S.E.2d at 287:

> Even where a prosecutor voluntarily recuses himself from a case, he can be discharged from his constitutional obligations [only] when it appears on the record that his reasons for disqualification are not frivolous or improper .... the prosecuting attorney is elected by the people of the county to represent them

in prosecutions against criminal offenders. Consequently, the public has a right to know why the attorney they have selected to represent them and whose salary they pay with their taxes, is unfit to prosecute a given case. The prosecuting attorney is a constitutional officer who exercises the sovereign power of the State at the will of the people and he is at all times answerable to them. W.Va. Const. art. 2, § 2; art. 3, § 2, art. 9, § 1. In other words, for the purposes of this issue, the prosecuting attorney is the trustee and servant of the people and at all times amenable to them. W.Va. Const. art. 3, § 2. The court must provide every safeguard to insure the public that the business of the State is being properly conducted. A hearing on the record provides the public with an accurate record of the actions of their elected officials, upon which they may evaluate his performance.

Point 5, in part, *State ex rel. Smith v. Bosworth*, 145 W.Va. 753, 117 S.E.2d 610 (1960)." *See also* West Virginia Code § 53–1–1 (1981 Replacement Vol.); *State ex rel. Miller v. Smith, supra; State ex rel. McCartney v. Nuzum*, 161 W.Va. 740, 248 S.E.2d 318 (1978); *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977); *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970); *Rakes v. Ferguson*, 147 W.Va. 660, 130 S.E.2d 102 (1963); *White Sulphur Springs, Inc. v. Jarrett*, 124 W.Va. 486, 20 S.E.2d 794 (1942); *Norfolk & Western Ry. v. Pinnacle Coal. Co.*, 44 W.Va. 547, 30 S.E. 196 (1898); *Wood County Court v. Boreman*, 34 W.Va. 362, 12 S.E. 490 (1890). Because precluding the grand jury from considering lesser included offenses in homicide cases exceeds the legitimate powers of a circuit court, the petitioner is entitled to a writ prohibiting Judge Dostert from interfering further in the presentment of the Payne case before the grand jury.

For the foregoing reasons, the petitioner's requests for writs of habeas corpus and prohibition are granted.

Writs granted.

NEELY, Justice, Opinion concurring in part and dissenting in part:

Again, *vox clamantis in deserto.* The number of cases in which I have felt required to point out that this court has attempted to answer questions no one is asking grows at an alarming rate. It is axiomatic that hard cases lead to bad law. Unfortunately, the majority seem prone to the formation of bad law even in easy cases. Although I agree with the narrow result in this case that the relator should be released from the local jail, I am in sharp disagreement with some of the dicta surrounding it and the dire implications it would have for professional law enforcement in this State. Furthermore, I am troubled by the author of the majority opinion's efforts to make law that will cover situations not at all like the case before us but rather related to other concrete factual situations that are not before us. Because the majority opinion makes bad law and because it is itself an affront to the requirement that courts decide only "cases and controversies" presented, I vigorously dissent.

The issue that faced this court today was whether it was proper for a circuit judge to require a prosecutor to seek a particular indictment from a grand jury, to read that grand jury an instruction which improperly stated West Virginia law on homicide, and to jail the prosecutor for failing to comply with his directives. I am in wholehearted agreement with the majority that the circuit judge's actions were beyond the scope of his authority and that the prosecutor was correct in not seeking a murder indictment and should not have been jailed for criminal contempt. Regarding the rest of today's opinion, it is hard to determine whether it is more troubling because it is entirely irrelevant or because it is entirely wrong. Because its irrelevance is perhaps the more obvious defect, I will begin with a few comments there.

The reader of today's opinion will be treated to a discourse on the right of an individual citizen to go to court when he believes a prosecutor has acted improperly. Although I am always pleased to hear of my learned colleague's unique theories on general issues of jurisprudence, one cannot help but wonder what place such a discussion has in a case that was not brought by a private citizen. This case is before this Court on a habeas corpus petition brought by a prosecutor who was jailed for contempt. As an elected official whose responsibility it is to deal with grand juries, there is no meaningful question as to his standing to raise the issues before us. As an individual who needed to draft his petition from a jail cell, there can be no question of his personal stake. Thus, a reading of the record in this case would make one wonder why the majority feels called upon to lay a foundation for allowing individual citizens to question the actions of prosecutors in a case that raises the question of whether it is proper for prosecutors to question the actions of circuit judges. The answer to that question, of course, is not in the record of *this* case.

Not only is that detour unnecessary, however, it is clearly and blatantly wrong. The majority reaches a bad result because it starts with an indefensible premise. Syllabus Point 1 of today's opinion states, "With respect to the determination of whether to seek an indictment and what indictment will be sought in a particular case, the probable cause standard represents the line of demarcation between prosecutorial discretion and prosecutorial duty." That statement is hardly a model of careful draftsmanship. To state that probable cause is "the line of demarcation" does not tell us what it separates. If the majority's point were that it is not within the discretion of a prosecutor to indict in cases where he does not believe he has probable cause, I would agree. In fact, all of the authorities would see this as an *ultra vires* act. That does not, however, appear to be the import of the majority's rule. Instead, they seem to believe that a prosecutor has no discretion but must indict in all cases where he has probable cause. That is not a bad rule; it is a terrible rule!

Even the authority upon which the majority claims to rely points clearly in a direction diametrically opposed to the result this Court reaches today. The majority cites the *West Virginia Code of Professional Responsibility* 7–103(A), which states: "A public prosecutor or other government lawyer *shall not* institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are *not supported by probable cause*." [emphasis added]. It is elementary logic that a mandatory standard of omission does not imply that in the reverse situation there is a mandatory standard of commission. If the rule were, "A prosecutor shall not accept bribes from individuals against whom he has probable cause," it would not follow that, "A prosecutor shall accept bribes from individuals against whom he does not have probable cause." Yet, the majority states that because prosecutors should never indict when they do not have probable cause they should always indict when they do have probable cause.

Next, the majority cites a portion of the American Bar Association's Standards for Criminal Justice that states, "A probable cause standard ... is sufficiently minimal that a prosecutor should not err in deciding whether the quantum of evidence is adequate to institute criminal proceedings." That comment is perhaps best understood in light of the text of the actual standard that states in full:

(a) It is unprofessional conduct for a prosecutor to institute, or cause to be instituted, or to permit the continued pendency of criminal charges when it is known that the charges are not supported by probable cause. A prosecutor should not institute, cause to be instituted, or permit the continued pendency of criminal charges in the absence of sufficient admissible evidence to support a conviction.

(b) *The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that sufficient evidence may exist which would support a conviction.* Illustrative of the factors which the prosecutor may properly consider in exercising his or her discretion are:

(i) the prosecutor's reasonable doubt that the accused is in fact guilty;

(ii) the extent of the harm caused by the offense;

(iii) the disproportion of the authorized punishment in relation to the particular offense or the offender;

(iv) possible improper motives of a complainant;

(v) reluctance of the victim to testify;

(vi) cooperation of the accused in the apprehension or conviction of others; and

(vii) availability and likelihood of prosecution by another jurisdiction.

(c) In making the decision to prosecute, the prosecutor should give no weight to the personal or political advantages or disadvantages which might be

involved or to a desire to enhance his or her record of convictions.

(d) In cases which involve a serious threat to the community, the prosecutor should not be deterred from prosecution by the fact that in the jurisdiction juries have tended to acquit persons accused of the particular kind of criminal act in question.

(e) The prosecutor should not bring or seek charges greater in number or degree than can reasonably be supported with evidence at trial. [emphasis added]

The comments indicate that the force of this standard is not to place a requirement on the prosecutor but to indicate the necessity of giving him broad discretion. The commentary begins by stating, "The charging decision is the heart of the prosecution function. The broad discretion given to a prosecutor in deciding whether to bring charges and in choosing the particular charges to be made requires that the greatest effort be made to see that this power is used fairly and uniformly. By its very nature *the exercise of discretion cannot be reduced to a formula.*" [emphasis added]

As the ABA standards contemplate, a requirement that prosecutors indict in all cases in which they have probable cause against a particular individual has serious flaws. Prosecutors' offices have limited resources and it is frequently necessary for them to make professional judgments concerning the optimal allocation of those resources. It is currently against the law in West Virginia to drive a taxicab with the doors locked and one who is convicted of this crime can be sentenced to up to a year in prison. *W. Va. Code*, 61-2-17 [1923]. It is also against the law to engage in horse trading within one mile of a state fair, *W. Va. Code*, 61-6-15 [1923], or to wear a hat in a public theater, *W. Va. Code*, 61-6-16 [1923]. Because prosecutors must devote the bulk of their time to protecting the citizenry from perpetrators of serious crimes against the person and against property, they do not have the luxury of vigorously prosecuting some of these lesser crimes. Despite this dereliction of duty, I am unaware of any public outcry. Never-theless, under today's decision if any single citizen is enraged because he has been temporarily imprisoned in the back seat of a car for hire or is frustrated because his view of a movie screen was obstructed by a baseball cap, he can bring an action requiring the prosecutor to devote precious resources to the prosecution of trivial crimes.

The need for prosecutorial discretion also extends to serious crimes. Prosecutors may also be motivated not to indict in particular circumstances because they believe that the suspect would be more useful as a state witness against others who have committed more heinous crimes. Similarly, a prosecutor may be aware of a possible federal indictment that would carry with it stiffer penalties, but which would be frustrated by principles of double jeopardy if the state prosecutor acted first. Under today's ruling it is impermissible for a prosecutor to consider any of these highly relevant factors. In imposing judicial supervision on prosecutors the majority raises more questions than it answers. Some of those questions were noted by a federal court in rejecting a writ of mandamus sought by the families of the victims of certain criminal acts to compel prosecution in those particular cases:

At what point would the prosecutor be entitled to call a halt to further investigation as unlikely to be productive? What evidentiary standard would be used to decide whether prosecution should be compelled? How much judgment would the [prosecutor] be allowed? Would he be permitted to limit himself to a strong "test" case rather than pursue weaker cases? What collateral factors would be permissible basis for a decision not to prosecute e.g., the pendency of another criminal proceeding elsewhere against the same parties? .... With limited personnel and facilities at his disposal, what priority would the prosecutor be required to give cases in which investigation or prosecution was directed by the court?

*Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 380 (2nd Cir. 1973).

The importance of professional judgment in individual cases was forcefully and eloquently underscored in a recent federal case from the Ninth Circuit. Dealing with the extent to which it is proper for judges to interfere with prosecutorial discretion in the area of plea bargains, the court stated:

As a general rule, the existence of discretion requires its exercise. When a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised. When dealing with issues as fundamental as a person's freedom or imprisonment, our judicial system must give every case independent consideration.

*United States v. Miller*, 722 F.2d 562 (9th Cir.1983).

In its zeal to reduce necessarily fact-intensive professional judgment to a simple formula, this court resorts to a level of reasoning that can only be described as primitive. We are treated to an "analysis" of *W.Va.Code*, 7–4–1 [1971] that sagely reminds us that the meaning of *any* is "any" and that the meaning of *shall* is "shall." All of this is very illuminating. Unfortunately, the majority is somewhat less forthcoming with meaningful definitions for the critical words in that statute which are, "necessary and proper." An exhaustive analysis of both legal and lay dictionaries reveals no definition of those terms which equates them with the word "indict." *W.Va.Code*, 7–4–1 [1971] cannot in any meaningful sense be said to be a statute that gives prosecutors a clear mandate. A statute which says that a public official shall do what he believes is proper in any situation under his authority is hardly a mandatory statute; rather, it is an empowering statute that recognizes the need for discretion in the exercise of that power.

Because the majority is plainly wrong in asserting that prosecutors do not have any discretion in indicting individuals when probable cause exists, the second level of their house of cards—that any citizen has a right to require prosecutors to perform the ministerial function of indicting for criminal offenses—falls of its own weight. In fact, as Justice Marshall has stated, "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard U.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). In *Oyler v. Bowles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), a case appealed from this Court, the Supreme Court recognized that, "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." In fact, one commentator and judge has noted that there have been few cases in American jurisprudence where mandamus has been sought against a prosecutor to force him to indict, and that in those few cases the prosecutor has invariably prevailed. Judge Tim Murphy, "The Relationship of the Prosecutor with the Judiciary", in *Prosecutorial Relationships and Criminal Justice*, National College of District Attorneys (J.J. Douglas, Editor, 1977). There is no sound reason for West Virginia to abandon this uniformly accepted principle.

Incredibly, the majority opinion exhibits seemingly blissful ignorance of even its own prior definitive statements of the law on this matter. Today we are told that a citizen has a right to seek a writ of mandamus compelling a prosecutor to prosecute because choosing not to prosecute is beyond his authority. Syllabus Point 9 of *State ex rel. Skinner v. Dostert*, 166 W.Va. 743, 278 S.E.2d 624 (1981) on the other hand states, "The decision to move to dismiss or to *nolle prosequi* a criminal warrant is a proper exercise of prosecutorial authority which may not be invaded by an extra-judicial order." Because that statement was an actual holding of the *Skinner* case, while today's view is clearly dicta expressed in a case that has nothing to do with the rights of citizens to question the actions of prosecutors, I assume that Syllabus Point 9 of *Skinner* remains the law in this jurisdiction.

The majority opinion also includes a hortatory statement that professionalism on the part of prosecutors in the exercise of their discretion is the best check on prose-

cutorial abuse. Although I would agree with that sentiment, it strikes me as an odd pronouncement in a case that goes to such great lengths to limit and in fact to negate any real prosecutorial discretion. The majority's opinion evinces a clear belief that prosecutors are not capable of exercising discretion professionally and seeks to turn publicly-elected officials into mere ministerial functionaries.

Such a step is not only unnecessary and demeaning to officials who are already politically accountable, it also ignores the long judicial tradition of refusing to interfere with the discretionary decisions of other branches of government. Once again, *Miller, supra,* speaks with authority and common sense:

> Separation of powers requires that the judiciary remain independent of executive affairs. Charging decisions are generally within the prosecutor's exclusive domain. Prosecutors—representatives of the executive branch of the government—are not mere servants of the judiciary. The tradition of prosecutorial independence is recognized both by case law in the Federal Rules of Criminal Procedure ....

> Although courts are free to accept or reject individual charge bargains, they should avoid creating broad rules that limit traditional prosecutorial independence. Generally, courts should be wary of second guessing prosecutorial choices. Categorical limitations on charge bargains may force prosecutors to bring charges they ordinarily would not, or to maintain charges they would ordinarily dismiss as ongoing investigations uncover more information. Such rules thus constitute an impermissible intrusion into what is properly the executive's exclusive domain.

Chief Justice Burger, hardly a man with a reputation for being soft on crime, recognized the necessity of maintaining a separation between the executive and judicial branches in this area. Writing for the United States Court of Appeals for the District of Columbia in *Newman v. United States,* 382 F.2d 479, 480 (D.C.Cir.1967), he stated:

> Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings or what precise charge shall be made or whether to dismiss a criminal proceeding once brought.

Similarly, in *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), another federal court stated:

> Although as a member of the Bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.

Today's opinion does not stop at telling prosecutors that they must prosecute whenever probable cause exists. It also tells them that they cannot prosecute "in the absence of sufficient admissible evidence to support a conviction." Thus, prosecutors can never indict for anything less than the "right" crime, and they can never indict for anything more than the "right" crime. What then, is left of their discretion?

In fact, the standards laid down by the majority today not only eliminate prosecutorial discretion, they establish a regime in which prosecutors will frequently be faced with contradictory requirements. There is a big difference between probable cause on the one hand and having sufficient admissible evidence to support a conviction on the other. Prosecutors must indict if they have probable cause; but they cannot indict unless they have sufficient evidence to convict. In cases where they have probable cause, but not sufficient evidence to convict, they will inevitably violate one of

their alleged statutory duties, as the majority misreads the statutes. Furthermore, under *Skinner, supra,* a prosecutor who fails to comport with the statutory requirements of *W.Va.Code,* 7-4-1 [1971] is subject himself to an action under article IX, § 4 of the *W.Va. Constitution.* In the face of all this, it will hardly be surprising if smart lawyers exhibit a certain hesitancy to enter into public service as prosecutors.

There are other practical problems with the rule this court establishes today. Even if we grant the majority its ludicrous reading of the statute on prosecutorial discretion, the prosecutor's mandate is that he take action when he believes probable cause exists. However, the majority would allow a citizen to bring an action in mandamus against the prosecutor in any case where that citizen believed the probable cause existed. He would not need to show that the prosecutor was consciously acting in dereliction of his duty. Leaving aside the fact that it would seem far more likely to be within the prosecutor's competence to determine whether probable cause existed, placing a publicly elected official in danger of being removed in disgrace from his job any time a citizen disagrees with his judgment as to the weight of the evidence in a particular case raises the specter of government by lynch mob. One can imagine numerous cases in which some sectors of the public charge the prosecutor with dereliction of duty because he did not charge a defendant with a severe enough crime, while other public-spirited citizens seek to have him indicted for overzealously bringing any charge at all.

In fact, one need not imagine circumstances at all. The case before this court is illustrative of the problem. The petitioner sought an indictment for involuntary manslaughter in a case where some citizens might have believed that the death should have been treated as accidental. From the judge's actions, it is apparent that other citizens might believe that a charge of first degree murder was required. Based on his professional experience, the prosecutor reached a decision on firm middle ground. That ground begins to look very shaky indeed when any citizen who disagrees with

that judgment can seek an extraordinary remedy that would not only negate the prosecutor's professional judgment but ultimately lead to his removal from office.

One must also wonder how all of these concerned citizens are going to have beliefs or reasons to believe that prosecutors are choosing or not choosing to indict particular individuals. One of the critical characteristics of the grand jury process is that it is to be confidential. The United States Supreme Court has recognized that, "Unlike an ordinary judicial inquiry, where publicity is the rule, grand jury proceedings are secret." *Levine v. United States,* 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960). Indeed, as early as 1914 West Virginia recognized that, "The law holds inviolate the secrecy of proceedings before the grand jury." *State v. Wetzel,* 75 W.Va. 7, 14, 83 S.E. 68, 71 (1914). Criminal charges are serious matters, and citizens who are targets of grand jury investigations should not be subjected to public denunciation if a grand jury and prosecutor do not find adequate reason to indict. As recently as 1982, the American Bar Association confirmed as one of its fundamental Grand Jury Principles: "The confidential nature of the grand jury proceedings requires that the identity of witnesses appearing before the grand jury be unavailable to public scrutiny." *A.B.A. Grand Jury Policy and Model Act,* Principle 21 (1982). The explanatory comments on that principle are illuminating:

> Principle No. 21 provides that the confidential nature of grand jury proceedings requires that the identity of witnesses appearing before the grand jury be unavailable to public scrutiny. Shielding their identity is necessary to prevent unjust harm to witnesses and potential defendants. The practice in some jurisdictions of having witnesses exposed to public and press as they emerge from the grand jury room is an unfair one—it taints the witnesses' reputations by the mere fact that they are appearing. The importance of maintaining the secrecy of grand jury proceedings had already been recognized by the Association, when, in

its 1975 policy, it urged strengthened penalties for unauthorized disclosure of grand jury information. The Justice Department in 1977 supported this principle.

If every citizen has a right to bring an action in mandamus to require a prosecutor to indict in cases where that citizen believes probable cause exists, it follows that citizens have a right to know whether the prosecutor is planning to bring an indictment. The only way that information can be made available is to open up grand jury proceedings. Thus, the long-standing principle that citizens are presumed innocent until proven guilty and that individuals' reputations should not be shattered long before they have ever been charged with any crime is to be sacrificed because of some vague, unarticulated and unsupportable belief that the prosecutors in this state are not doing their jobs.

Of course, prosecutors will sometimes make mistakes. Certainly, they will often make decisions that anger some individual in the community. Inherent in the job is the necessity to make tough judgment calls in cases that people care about, and controversy comes with the territory. Nevertheless, the fact that a particular decision is not universally applauded does not make it an abuse of discretion, and the one principle for which the majority is able to find significant authority is that, "Absent an abuse of discretion, judicial interference with the exercise of prosecutorial judgment as to what charge to bring in a criminal prosecution is impermissible."

Today's case is an example of a prosecutor exercising sound professional judgment and integrity in the face of considerable personal duress. To the extent that the majority opinion supports his principled stand, I am in wholehearted agreement. However, it seems to me a grave injustice to use this case as an opportunity to make two other rulings that are unsupportable as principles of law and potentially disastrous as a matter of policy; namely, (1) that prosecutors have no discretion in deciding whether to charge an individual once probable cause exists; and, (2) that any

individual citizen has a right to bring actions in mandamus to compel prosecutions.

Those rulings would tie the prosecutor's hands and make effective law enforcement even more difficult. They would make secrecy in grand jury proceedings impossible and burden the courts with responsibility for listening to unfounded charges from every self-appointed guardian of the public interest in criminal prosecutions. They demean the status of a publicly elected and accountable official and violate principles of separation of powers. That the majority would err so badly on issues that were not even raised by the case before it is the most effective argument I have yet heard for judicial restraint.